713 So.2d 1220 (1998)
STATE of Louisiana
v.
Eual Howard SMITH, Jr.
No. 97 KA 2079.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
Herbert R. Alexander, Mandeville, for Defendant-Appellant Eual Howard Smith, Jr.
Walter Reed, District Attorney by Terry M. Boudreaux, Special Appeals Counsel, Gretna, for Plaintiff-Appellee State.
Before GONZALES, PARRO and GUIDRY, JJ.
GUIDRY, Judge.
The defendant, Eual Howard Smith, Jr., was charged by bill of information with two counts of molestation of a juvenile, violations of La.R.S. 14:81.2, and pled not guilty. Prior to trial, the State decided to nolle prosequi count II. After a jury trial on count I, the defendant was convicted of attempted indecent behavior with a juvenile, a violation of La.R.S. 14:27 and La.R.S. 14:81, and was sentenced to three years imprisonment at hard labor.[1] However, the trial court suspended *1221 the sentence and placed the defendant on five years probation, subject to: serving three months in parish jail (suspended pending the outcome of this appeal), registration and notification as a sex offender under La.R.S. 15:542, enrolling in and completing sex offender counseling, paying the costs of counseling for the victim, and a fine of $1,000.00, plus court costs. The defendant now appeals, designating two assignments of error.

FACTS
During the summer of 1996, the victim, K.T., informed her mother's friend, Julie Annette Cox, that her grandmother's husband, the defendant had touched her in an inappropriate area for several years, on and off, for several years. The defendant was arrested and charged with two counts of molestation of a juvenile. Count II was nolle prosequied. At the defendant's trial on count I, in response to defense questioning, K.T. testified that when she was four or five years old, the defendant rubbed her "butt" when she was lying on the sofa. K.T. testified that when she was approximately nine years old, she would wake up with her pants undone when she slept over at the defendant's house. In response to State questioning, K.T. testified that in the middle of the night, the defendant would kiss her back on the skin, touch her breasts on the skin, and touch her vagina over her pants and underwear. K.T. testified that when she threatened to tell her father about the incidents, the defendant told her, "I know secrets about you, and you know secrets about me; and we're not going to tell anybody." The defendant was convicted of attempted indecent behavior with a juvenile. The instant appeal ensued.

VOIR DIRE
In assignment of error number one, the defendant contends the trial court erred in permitting the State to ask questions during voir dire which dealt exclusively with the facts of the case to be presented by the State. The defendant claims the State's questioning was an attempt to get the prospective jurors to commit themselves as to how they would accept or reject testimony to be presented at trial. He relies upon the jurisprudential rule that voir dire examination may not encompass unlimited inquiry into all possible prejudices of prospective jurors, nor their opinions on the evidence (or its weight) to be offered at trial, nor hypothetical questions and questions of law which call for any pre-judgment of supposed facts. See State v. Pooler, 96-1794, p. 19 (La.App. 1st Cir. 5/9/97); 696 So.2d 22, 38, writ denied, 97-1470 (La.11/14/97); 703 So.2d 1288; State v. Bell, 477 So.2d 759, 766 (La.App. 1st Cir.1985), writ denied, 481 So.2d 629 (La. 1986); State v. Burton, 464 So.2d 421, 425 (La.App. 1st Cir.), writ denied, 468 So.2d 570 (La.1985).
La. Const. art. I, § 17, guarantees that an accused shall have a right to full voir dire examination of prospective jurors. La. C.Cr.P. art. 786 further provides that the court, the State, and the defendant shall have the right to examine prospective jurors. The purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. Voir dire is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. While the trial judge must afford wide latitude to counsel in the conduct of voir dire examination to effectuate the accused's right to full voir dire of prospective jurors guaranteed in La. Const. art. I, § 17, the scope of voir dire examination is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of that discretion. In order to determine whether a trial judge has in fact afforded a sufficiently wide latitude to the defendant in examining prospective jurors, a review of the trial judge's rulings should be undertaken on the record of the voir dire examination as a whole. State v. Berry, 95-1610, pp. 5-6 (La.App. 1st Cir. 11/8/96); 684 So.2d 439, 448, writ denied, 97-0278 (La. 10/10/97); 703 So.2d 603.
*1222 The questioning by the State to which the defendant objects occurred during the voir dire examination of the first and only group of prospective jurors, to-wit:
In this case, as in many of the cases involving allegations of child abuse, what you will hear is the statement by one child. This is literally a one-on-one testimony situation. This islike many other cases, child abuse rarely takes place at the corner where many people see it. It rarely involves an independent eyewitness.
Defense counsel objected, arguing that the State was attempting to elicit a factual scenario that would arise at trial and attempting to get the jurors to commit themselves one way or another to that factual scenario. The court ruled that the category of questioning defense counsel had referenced was prohibited. However, the court found the State's question did not fall into the prohibited category and accordingly, defense counsel's objection was overruled. Defense counsel objected to the court's ruling.
The State continued:
When we left off, I believe that the question that I had hoped to hear a response to is whether or not any of you would require that there be an independent witness or additional evidence, whether or not you can consider the testimony of a single victim?
Were each of you able to understand the question as I posed it, that there will be a single eyewitness in this case? Each of you understand that we are asking you to base your verdict in large part on the testimony of a single witness and in fact that that witness is a child? Each of you feel comfortable in sitting on this jury knowing that that is
Defense counsel objected again, arguing that the State was going outside of the court's original ruling and being fact specific. The court again overruled the objection.
The State continued:
Each of you feel comfortable in listening to that testimony and basing your decision based upon the testimony of the child? Each of you understand the question, and can you listen to this case knowing that that is the situation?
Let me see if we can do this by a show of hands. The statement of the child, how many of you believe that the child should have to come to court and testify here? Or how many believe that she should not? Let me ask that. How many of you believe that the child should not have to come into court, face the person who is alleged to have committed this offense just by a show of hands? How many of you believe that she should not have to come to court? That she should not have to come to court, that the childthe general proposition that the child should not have to come to court in this situation and that she should be allowed tothat there should be other provisions for that?
Now, how many of you believe that she should have to come to court and testify? Let me seeif you wouldn't mind holding your hands up for a second.
. . . . .
The answer is that there are provisions for a tape to be made and shown to you in place of the child testifying. But the other side of that coin is that the defendant is allowed to cross-examine the child if the tape is used. So, fundamentally, the child basically is required to be available for court in this case. Each of you feel comfortable with that proposition, that a tape may be used but in many cases the tape is not used because the child must be cross-examined anyway.
. . . . .
The State then asked each potential juror the following question:
Between these two choices, do you think that there is more sexual abuse of children that is not reported or that there are more false allegations of sexual abuse of children?
Subsequently, the State continued:
Many of us hold a preconception about a child in this case, how a child might act or look, or what type of background they're from. What I would like for you to do is commit that you would not prejudge this child. The child is fromand I'll be candid *1223 with youa lousy background, has had a tough life. And many children who take the stand have many different reactions to being asked questions. Some clam up and won't answer questions. Some can't answer questions. Some talk about it in analmost a distant manner as if it happened to somebody else. They just say as little as possible to try to get this over with. Any number of reactions that may come up from this child. Each of you agree not to prejudge this child, not to prejudge [K.T.], but to judge her based upon how she strikes you as a credible or not credible person? Each of you comfortable in doing that?
Any of you expect this kid to remember dates and times? Any of you expect this child to have had a calendar as to when these activities took place?
Defense counsel made an "ongoing objection" to the State's line of questioning, which the court overruled.
A review of the voir dire as a whole reveals no clear abuse of discretion by the trial court in allowing the State's above-quoted voir dire examination. Contrary to the defendant's assertions, the voir dire examination was not a prohibited attempt to elicit a factual scenario that would arise at trial and then to get the jurors to commit themselves one way or another to that factual scenario. Rather, the State properly tested the competency and impartiality of the prospective jurors to follow the applicable law, i.e., that the testimony of the victim alone is sufficient to prove the elements of an offense; and that it is the function and obligation of the trier of fact to make credibility determinations and to decide whether to accept or reject, in whole or in part, the testimony of any witness. See State v. Cox, 602 So.2d 1081, 1083 (La.App. 1st Cir.1992), writ denied, sub nom. State ex rel. Cox v. State, 94-0631 (La. 6/28/96); 675 So.2d 1107; State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989); State v. Patterson, 540 So.2d 515, 518 (La.App. 1st Cir.1989).
This assignment of error is without merit.

OTHER ACCUSATIONS OF SEXUAL MOLESTATION
In assignment of error number two, the defendant contends the trial court erred when it did not permit him to impeach the victim with evidence that she had made other accusations of sexual molestation which she subsequently retracted.
La.C.E. art. 412, in pertinent part, provides:
A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
C. Motion. (1) Before the person accused of committing a crime that involves sexually assaultive behavior may offer under Paragraph B of this Article evidence of specific instances of the victim's past sexual behavior, the accused shall make a written motion in camera to offer such evidence. The motion shall be accompanied by a written statement of evidence setting forth the names and addresses of persons to be called as witnesses.
(2) The motion and statement of evidence shall be served on the state which *1224 shall make a reasonable effort to notify the victim prior to the hearing.
D. Time for motion. The motion shall be made within the time for filing pre-trial motions specified in Code of Criminal Procedure Article 521, except that the court shall allow the motion to be made at a later date, if the court determines that:
. . . . .
(2) The evidence is of past sexual behavior with someone other than the accused, and the accused establishes that the evidence or the issue to which it relates is newly discovered and could not have been obtained earlier through the exercise of due diligence.
E. Hearing. (1) If the court determines that the statement of evidence contains evidence described in Paragraph B, the court shall order a hearing which shall be closed to determine if such evidence is admissible. At such hearing the parties may call witnesses.
. . . . .
(3) If the court determines on the basis of the hearing described in Subparagraph (E)(1) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence may be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the victim may be examined or cross-examined. Introduction of such evidence shall be limited to that specified in the order.
. . . . .
F. Past sexual behavior defined. For purposes of this Article, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged.
At trial, defense counsel asked Julie Annette Cox, "Did [K.T.] also tell youdid [K.T.] also tell you that she had accused [T.S.], her twelve-year-old cousin, of molesting her?" After this question, the State moved that the defendant be enjoined and prohibited from addressing any evidence of prior sexual conduct on the part of the victim, pursuant to La.C.E. art. 412. Defense counsel argued he had not asked Cox about sexual behavior on the part of the victim, but rather had questioned her concerning accusations K.T. had made. The State pointed out that the Louisiana Supreme Court had rendered a recent decision, State v. Allen, 97-1058 (La.4/30/97); 693 So.2d 728, concerning the same issue in a former case originating from the same trial court hearing the present case.[2] Defense counsel argued:
Let me explain something just for the record. I interviewed two people yesterday at about four o'clock at my office when I found out about this. I don't have any idea whether these allegations are true or false or not. I wasn't there any more than you were. And after a hearing, it wouldn't make any difference. You still wouldn't be able to tell. But the fact of the matter is the child did make the allegations. Her mother knows she made the allegations because she spoke to people about it. I intend to bring that out. It all happened during the same course of events that we're talking about in this case, and I don't believe [La.C.E. art.] 412 covers it because this is not past sexual activity on the part of the victim. It's not past sexual activity. It's state of mind.
The trial court agreed with defense counsel, but pointed out that in Allen, the supreme court had overruled a previous ruling whereby the trial court had held that where the particular facts of the case did not bring it under La.C.E. art. 412, no hearing was required prior to ruling. Accordingly, the court held a hearing concerning whether or *1225 not K.T. had made prior false allegations of sexual molestation.
The defendant called K.T.'s mother (the mother) to the stand. In response to defense questioning, the mother answered affirmatively when asked if she remembered that, "about the same time that all this was going on[,]" K.T. had come to her and told her K.T.'s cousin, (T.S.), had done inappropriate things with her and molested her. However, when defense counsel asked the mother whether K.T. had retracted the allegations against T.S., she responded, "Not to me, no." Defense counsel then asked the mother whether K.T. had ever retracted her allegations to T.S., specifically whether she had told him, "ha, ha, I was just kidding?" The mother responded, "Not that I recall. She never told me anything." Subsequently, defense counsel again asked the mother, "To the best of your knowledge, then, what you're saying, to you, she never did retract that?" The mother responded, "No, she did not." In response to State questioning, the mother stated: she had no reason to believe that K.T.'s allegations against T.S. were false, she believed the alleged incident with T.S. had taken place, her husband believed that it had taken place, her ex-husband had confronted T.S. concerning the incident, and her ex-husband and she had decided that K.T. would have no further contact with T.S.
The defense next called K.T. to the stand. In response to defense questioning, K.T. stated that there was a time when she had told her mother T.S. had touched her inappropriately; the incident with T.S. was "a little bit" earlier than the incident with the defendant; she had not told T.S. that he had touched her in "a wrong spot;" she had told T.S's brother, M.S., that T.S. had touched her in "a wrong spot;" she had not told T.S. and M.S., "ha, ha, I was just kidding," five or ten minutes after making the allegation against T.S.; and what she had said happened between her and T.S. did actually happen.
The defense next called M.S. to the stand. In response to defense questioning, M.S. stated: he had heard K.T. tell his brother, T.S., "that he touched her and all[;]" "that he did it like that night, like a long time ago and he kepthe was doing it like a lot, every time she spent the night and all[;]" T.S. denied the accusation; and K.T. then skated off and said, "I was just joking" when she came back.
The trial court ruled as follows:
All right. Based on the testimony that we just heard in this hearing under Code of Evidence Article 412, I find that there were no prior false allegations of sexual molestation by the victim. And pursuant to Article 412, if there were, in fact, incidents of sexual molestation, I find that specific instances of the victim's past sexual behavior are not admissible and that the exceptions of their inadmissibility under Paragraph B-1 and 2 do not apply in this case. Therefore, I will not permit any evidence of prior sexual misconduct, nor will I allow the cross-examination of the victim or evidence of prior false allegations at the trial.
Defense counsel objected to the court's ruling, arguing the ruling denied the defendant his most basic right to confront the witnesses against him. The State responded that were the questions asked, it would necessarily have to rehabilitate the victim by proving the truth of the allegations.
In Allen, the supreme court ruled, in pertinent part, as follows:
The case is remanded to the trial court for a pre-trial evidentiary hearing on the issue of prior false allegations made by the victim. In the event the court determines there are prior false allegations of sexual molestation by the victim, the defendant shall be allowed to cross examine the victim and to present evidence regarding same at trial. See State v. Cappo, 345 So.2d 443, 445 (La.1977).
693 So.2d 728.
There was no abuse of discretion in the trial court's refusal to permit the presentation of evidence concerning allegedly subsequently retracted prior accusations of sexual molestation by the victim. When reviewing a trial court ruling based upon findings of fact, great weight is placed upon the determination of the court below because of its opportunity to observe the witnesses and weigh *1226 the relative credibility of their testimony. See State v. Carr, 530 So.2d 579, 589 (La. App. 1st Cir.), writ denied, 533 So.2d 354 (1988), cert. denied, sub nom., Carr v. Louisiana, 489 U.S. 1098, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989). Allen gives a defendant the right to cross-examine the victim and to present evidence regarding prior false allegations of sexual molestation by the victim, in the event the court determines there are prior false allegations of sexual molestation by the victim. In the instant case, the trial court dutifully complied with the hearing requirements as set forth by Allen and concluded that any prior accusations of molestation made by the victim were not false.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The bill of information in the instant case charged that the defendant committed count 1 between August 1, 1987, and February 15, 1996. La.R.S. 14:81 was amended during this period by 1990 La. Acts No. 590, § 1. It was amended subsequent to this period by 1997 La. Acts No. 743, § 1. However, neither amendment changed the penalty provisions of La.R.S. 14:81. Similarly, La.R.S. 14:27 was amended during and subsequent to the relevant period without change to any penalty provisions pertinent hereto. See 1989 La. Acts No. 609, § 1 and 1995 La. Acts No. 988, § 1.
[2] In Allen, a case in which this Court denied the defendant's writ application, the defendant sought to introduce evidence that the victim, his fourteen-year old niece, had accused others of molesting her. He requested an in camera hearing on the victim's past sexual behavior because she had made charges of molestation against her grandfather and she herself had been accused of molesting younger males. The trial court denied the motion on the basis that the defendant's allegations were not within the evidence admissible under La.C.E. art. 412. See State v. Allen, 97 KW 0631 (La.App. 1st Cir. 3/25/97).