722 So.2d 1073 (1998)
STATE of Louisiana, Appellee,
v.
Robert TAYLOR, Sr., Appellant.
No. 31224-KA.
Court of Appeal of Louisiana, Second Circuit.
November 13, 1998.
Rehearing Denied December 3, 1998.
*1074 Richard C. Goorley, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Donald E. Hathaway, Jr., Assistant District Attorney, for Appellee.
Before NORRIS, STEWART and PEATROSS, JJ.
NORRIS, Judge.
The defendant, Robert Taylor, Sr., was convicted of aggravated rape, a violation of La. R.S. 14:42, upon his then 11-year-old step-daughter, R. J., and was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Taylor now appeals, urging one assignment of error. We reverse the defendant's conviction and remand the case to the district court for a new trial.

Facts and Procedure
Robert Taylor, Sr. married R. J.'s mother, Ruby Jenkins,[1] when R.J. was seven months old (R. J.'s birthday was November 30,1983). Taylor had one son and one step-son from his previous marriage; Taylor and his wife together had three daughters.
On July 15, 1996, R. J.'s mother learned that R.J. missed her menstrual cycle for that month. In reaction, Ms. Jenkins asked her daughter "who she had been pulling her pants down for." The child responded "nobody." The next day, Ms. Jenkins repeated the question to the child, and this time R.J. said, "nobody but daddy, he makes me do it with him while you're gone."
Ms. Jenkins called the police, who then arranged for a community services worker, Chareda White, to speak with R.J. This interview suggested that further investigation was warranted. On July 18, R.J. was examined by Dr. Ann Springer, a pediatrician with expertise in the field of sexual abuse. Dr. Springer conducted a gynecological examination of the child. The doctor discovered that the child's hymen was not present and opined that the child's vagina had been penetrated multiple times.
Taylor was prosecuted for aggravated rape. R.J. testified at the trial that she had been having sexual intercourse with Taylor since she was 10 or 11 and in the fourth or fifth grade. R.J. said that from the first time, Taylor would give her a few dollars after the act and threaten to whip her with an extension cord if she refused to submit or told anyone what was happening. The child said that Taylor made her engage in both vaginal and oral sexual acts, and she described these acts in graphic detail.
The defense was furnished access to Ms. White's records pursuant to discovery. These show that originally R.J. stated she was not having sex, then the next day she told her mother she was having sex with only the accused. Two weeks later, Ms. Jenkins told Ms. White that R.J. stated that she did have sex with her friend, "Travis." Ms. White interviewed R. J., who admitted again that she had sex with her friend. Then, on August 8, Ms. Taylor reported to Ms. White that R.J. told her of more young males with whom she has had sex.
During cross-examination of R. J., defense counsel engaged her in the following colloquy about who R.J. had told her mother she had sex with:
Q: You said nobody but [step]daddy?

*1075 A: Yes, sir.
Q: Is that true?
A: Yes, sir.
Q: You didn't do it with anybody else?
A: No, sir.
The state objected at this point on the grounds that the rape shield law, La. C.E. art. 412, did not permit such questioning. The state argued that the question of whether or not she had ever had sex with another individual is inadmissible evidence under Article 412 concerning the victim's past sexual behavior in a sexual assault case. The state contended that the defense was "asking her if she's ever had sex with anybody. He's just trying to go into her past sexual behavior and discredit her. It's inadmissible." Defense counter argued that R. J.'s statements that she only had sex with the accused, then that she had sex with a boyfriend, and then again that she was having sex with several boys in the neighborhood, were admissible because they showed that R.J. kept changing her story. "It's a matter of impeachment, not to go into her prior [conduct]. If she states one thing at one time and then something else a second time and something else a third time, then that shows that her story is not being consistent and that's what impeachment is all about." The trial court sustained the state's objection pursuant to the arguments made, stating "[t]hat line of questioning will not be allowed."
R.J.'s sister, R.T., testified that she once saw the accused on top of R.J. "moving up and down." R.T. denied previously telling Ms. White that she had only seen her father kissing R.J. and that they both had their clothes on, but Ms. White testified that this was the child's original story. At first R.T. appeared unsure of when she witnessed Taylor with R.J., but finally testified that it had occurred in 1996, which was after the dates on the bill of indictment.[2]
Taylor's son testified about an earlier incident when R.J. told him that "one day she was going to tell a lie on daddy and momma was going to believe it." Ms. Bright, a neighbor, testified that she once heard R.J. say that Taylor was "not going to whip me, say, cause one of these [sic] day I'm going to tell a big fat lie on him and [sic] he not going to be around us." C. B., a friend of the Taylors', testified that R.J. visited his school after she had accused Taylor. C.B. stated that when he said to R.J. "You know what you did, that was wrong," R.J. replied, "I lied to keep y'all out of trouble." R.J. denied ever making any of the statements.
The state placed great emphasis on R. J.'s credibility, specifically her second statement to her mother. In closing argument, the prosecution focused on the fact that when asked who she had sex with, R.J. stated, "Nobody but daddy. Nobody but daddy." The prosecution also stressed Dr. Springer's reliance on R. J.'s credibility; the doctor testified that the only way to tell what happened and who did it was to ask the child. The state reiterated this in its closing argument. In addition, the prosecution stated: "Who's telling the truth? It's quite simple. Can we prove something happened? I think so. I know so. She has no hymen. It all corroborates [R. J.]. It all goes back to the corroboration of [R. J.'s] story about who raped her." The prosecution again argued for R. J.'s credibility in rebuttal, stating the defense has "made implications about [R. J.], trying to disparage her character, dirty her up a little bit. That ain't right. That ain't right and you didn't hear that evidence from the witness stand."
The jury convicted Taylor of aggravated rape. Taylor subsequently filed a motion for new trial, arguing that the court should not have limited his questioning of the victim because the questioning was designed to (1) refute R.J.'s testimony that she had sexual relations only with Taylor and (2) refute the implication from the state that Taylor was the only person who had sex with R.J. and therefore the physical evidence was attributable solely to him. The motion was argued to the court and denied.
*1076 Defendant now appeals, urging the single assignment of error that the trial court erred in refusing to allow defense counsel to crossexamine the complainant about statements she had made admitting sexual encounters with persons other than the accused; refusing to allow defense an opportunity to impeach the witness with prior inconsistent statements.

Discussion
Due process affords a defendant the right of full confrontation and cross examination of the State's witness. U.S. Const. amend. 6; La. Const. art. 1, Sec. 16; Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); State v. Van Winkle, 94-0947 (La.6/30/95), 658 So.2d 198.
An individual accused of a sex crime is generally prevented from introducing specific instances of the victim's past sexual behavior. La. C.E. art. 412. Two statutory exceptions (pertaining to the 72-hour rule and proof of consent) are plainly not applicable to this case. La. C.E. art. 412. An additional, narrowly drawn exception is recognized, and has been incorporated in the comments to art. 412, which state that "[t]his Article, like every Article in this Code is necessarily subject to constitutional requirements." La. C.E. art. 412, comment (b). Furthermore, article 412 is not intended to exclude evidence showing bias, interest, or corruption. La. C.E. art. 412, comment (c).
The Louisiana Supreme Court has expressly recognized that a restriction of a defendant's offer to introduce testimony as to the victim's prior sexual history may violate the defendant's right to confrontation and fair trial. State v. Vaughn, 448 So.2d 1260 (La.1983); see also La. C.E. art. 412, comment (b). Recently, in State v. Allen, 97-1058 (La.4/30/97), 693 So.2d 728, the Supreme Court used this exception in recognizing that a defendant may use a victim's prior false allegations of molestation. Id; see also, State v. Smith, 97-2079 (La.App. 1st Cir. 6/29/98), 713 So.2d 1220, 1998 WL 355045.
Taylor argues that the trial court should have allowed him to present evidence that R.J. made previous statements inconsistent with her testimony at trial because this evidence was offered to probe R. J.'s credibility and was not offered as substantive evidence of her prior sexual conduct. In brief, Taylor argues that he "sought to confront his accuser and impeach her testimony by showing that although she testified that she didn't do it with anybody but her step-daddy ... she had made prior statements about having sexual relations with someone else."
The transcript shows that the state objected after the defense asked the victim, "You didn't do it with anybody else?," and she replied, "No, sir." That question did not actually probe the child's prior statements; rather, it sought information about the child's prior conduct. In arguing the objection, however, defense counsel clearly stated to the court that he wanted to impeach R. J., based on her saying one thing at one time and something else a second time and something else a third time. His plain intent was to use R. J.'s prior inconsistent statements for impeachment. In sustaining the argument, the court stated that the "line of questioning will not be allowed." The judge's ruling was overly broad. Although evidence of R. J.'s sexual behavior with individuals other than Taylor was inadmissible under La. C.E. art. 412, the ruling effectively prevented defense from impeaching R. J.'s testimony with her prior inconsistent statements about who she had sex with, which under the circumstances of this case should have been allowed.
The state placed great emphasis on R. J.'s credibility, and her statement that she had sex only with Taylor. The state built its case on the theory that R.J. said she never had sex with anyone else; she obviously had been penetrated; ergo, the perpetrator must have been Taylor. The theory obviously rests on R. J.'s credibility, which defense was not allowed to call into question. In fact, Taylor's only defense was that R.J. was lying, and thus, he should have been able to challenge R. J.'s credibility to show that she was not telling the truth about having sex with him.
We recognize that the state attempted to corroborate R. J.'s second statement. R.T. testified to seeing Taylor on top of R. J., moving up and down. However, defense *1077 showed that R.T. had made inconsistent statements in regards to the incident which she reported, originally stating that both R.J. and her father were clothed and merely kissing, and only later reporting that Taylor was lying on top of R. J., moving up and down. Additionally, R.T. could not specify that the incidents had occurred in the applicable time frame to make the offense aggravated rape.
Due to the judge's ruling, the jury was left with the incorrect impression that R.J. had only admitted having sex with the defendant. The record showed that R.J. made inconsistent statements in regards to her sexual behavior. As such, Taylor's right to present a defense was clearly compromised. We are constrained to find that barring the defendant from cross-examining R.J. about her prior inconsistent statements was not harmless beyond a reasonable doubt, particularly since the state relied almost entirely on R. J.'s credibility and Taylor's only defense was the lack thereof. La. C.C.P. art. 921; State v. Fowlkes, 25,870 (La.App.2d Cir.3/30/90), 634 So.2d 953; see also, State v. Ferdinand, 441 So.2d 1272 (La.App. 1st Cir. 1983), writ denied 445 So.2d 1233 (La.1984). The court's ruling broadly foreclosed this critical element of impeachment, and therefore constitutes reversible error.
Upon remand, the trial court should instruct the jury that this evidence, if believed, may be considered, not to show that the victim was sexually promiscuous, but solely as it bears on the credibility of the victim.

Conclusion
For the above reasons, defendant's conviction is reversed and the case is remanded for a new trial.
CONVICTION REVERSED AND REMANDED FOR A NEW TRIAL.
PEATROSS, J., dissents with written reasons.
PEATROSS, J., dissenting.
I respectfully dissent.
La. C.E. art. 412, the so-called "Rape Shield Law," provides, in part:
A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
The victim, who was 11 years old at the time of the alleged offense, testified she told her mother that she had had sex with no one but the defendant. Defense counsel asked her if that was true and the child responded in the affirmative. She was then asked by defense counsel, "You didn't do it with anybody else?", and the child responded, "No, sir." At that point, counsel for the State objected on the grounds that the question violated the Rape Shield Law. Defense counsel argued that the question was asked for impeachment purposes to show prior inconsistent statements.
The trial court correctly sustained the State's objection. The purpose of La. C.E. art. 412 is to protect victims from having their reputations and past sexual behavior questioned. There was no evidence before the trial court of any prior inconsistent statements at the time the objectable question was asked and defense counsel made no proffer. Thus, as the majority acknowledges, the question, "You didn't do it with anybody else?", did not probe the child's prior statements; rather, it sought information about the child's past sexual behavior.
The question asked by defense counsel was a patent violation of the spirit (as well as the letter) of the Rape Shield Law. The inquiry of defense counsel into the child's sexual history was irrelevant at the time the question was asked and the trial court did not err in sustaining the State's objection.
As above stated, I respectfully dissent.

APPLICATION FOR REHEARING
Before NORRIS, HIGHTOWER, WILLIAMS, STEWART and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] Ms. Jenkins divorced Taylor after these events and resumed using her maiden name.
[2] In the bill of indictment, the dates of the offense charged were alleged to have occurred between November, 1994, through November 30, 1995, ending when R.J. turned 12 years old. To be found guilty of aggravated rape, the jury had to find that Taylor had sex with R.J. when she was under the age of 12 years. La. R.S. 14:42.