631 So.2d 1378 (1994)
STATE of Louisiana,
v.
Bruce ZIERHUT.
No. 93-KA-673.
Court of Appeal of Louisiana, Fifth Circuit.
February 9, 1994.
*1379 John M. Mamoulides, Dist. Atty., Terry M. Boudreaux, Asst. Dist. Atty., 24th Judicial Dist., Parish of Jefferson, Gretna, for plaintiff-appellee.
Bruce G. Whittaker, Indigent Defender Bd., 24th Judicial Dist., Gretna, for defendant-appellant.
Before GAUDIN, DUFRESNE and WICKER, JJ.
GAUDIN, Judge.
Bruce Zierhut was convicted of the aggravated rape[1] of his daughter and sentenced to life in prison without benefit of parole, probation or suspension of sentence.
The victim was 14 years old when she told officials that her father had been abusing her "... from a very young age."
On appeal, Zierhut contends (1) that he was denied his constitutional right to present a defense and confront his accuser and (2) that the trial judge erred in restricting his right to a full voir dire. Appellant also asks us to look for errors patent on the face of the record.
Neither assignment of error has reversible merit; further, there are no errors patent. We affirm Zierhut's conviction and his sentence, which was mandatory for aggravated rape.
On September 25, 1991, Cheryl George of the Child Protection Bureau contacted the Sex Crime Unit of the Jefferson Parish Sheriff's Office to report a sexual molestation offense involving a juvenile. Ms. George advised Sgt. Antionette Ulmer of the Sex Crime Unit that she had received an anonymous telephone call about the molestation and had gone to the victim's high school to investigate. When interviewed at school by Ms. George, the 14-year-old victim confirmed that her father, Bruce Zierhut, had sexually molested her over a period of several years. Ms. George also interviewed the victim's 15-year-old brother and her 15year-old boyfriend who both stated that they knew about the molestation.
Sgt. Ulmer asked Ms. George to bring the three teenagers in for questioning. Sgt. Ulmer interviewed each of the three teenagers separately. The victim told Sgt. Ulmer that her father started sexually molesting her at a very early age and continued until October, 1990, when her mother was diagnosed as suffering from terminal cancer. The victim said that her father fondled her breasts and actually penetrated her vagina with his penis when she was nine years old. He also attempted anal intercourse with her.
The victim's brother told Sgt. Ulmer that he had once seen his father engaging in sexual intercourse with his younger sister.
On September 25, 1991, Sgt. Ulmer received a telephone call from Zierhut who inquired about the investigation. When St. Ulmer said that she was investigating allegations of sexual abuse involving his daughter, Zierhut asked whether he could meet with Sgt. Ulmer to discuss the situation. Sgt. Ulmer agreed and scheduled a meeting in her office.
After telling Zierhut that he was under investigation for the aggravated rape of his daughter, Sgt. Ulmer advised him of his Miranda rights and asked him to sign a standard form acknowledging that he had been warned of these rights. Zierhut signed the form and St. Ulmer then told him that his daughter had accused him of sexually abusing her from a very early age until the time that her mother was diagnosed with cancer. Sgt. Ulmer also told Zierhut that his son had witnessed one incident of sexual intercourse.
According to Sgt. Ulmer's trial testimony, Zierhut became remorseful upon hearing the sexual abuse allegations against him, but he claimed that the activity had ended long before his wife was found to be terminally ill. In response to a question about the truthfulness of the accusations, Zierhut stated that his daughter was not lying.
At trial, the victim testified that she was raped many times by her father. She recounted in detail four specific incidents.

*1380 ASSIGNMENT NO. 1
In this assignment of error, Zierhut complains because he was not allowed to impeach the testimony of Dr. Helen Britton, a pediatrician called as a prosecution witness. Dr. Britton examined the victim in October, 1991 and concluded that she had been sexually abused. The victim, Dr. Britton stated, had a small scar on the posterior fourchette of the vagina. Also, Dr. Britton said that the victim had venereal warts, which are generally transmitted through sexual contact.
Ziebert sought to establish through Dr. Britton's testimony on cross-examination, coupled with other evidence, (1) that the victim had been raped by an uncle when she was six years of age, thereby establishing a counter source for the vaginal injury, and (2) that while the victim had venereal warts, he (Ziebert) and his deceased wife did not. The trial judge prohibited these lines of inquiry as violations of the so-called rape shield law, La.C.E. art. 412, which reads:
"A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
"B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
"(1)Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
"(2)Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
"C. Motion. (1) Before the person accused of committing a crime that involves sexually assaultive behavior may offer under Paragraph B of this Article evidence of specific instances of the victim's past sexual behavior, the accused shall make a written motion in camera to offer such evidence. The motion shall be accompanied by a written statement of evidence setting forth the names and addresses of persons to be called as witnesses.
"(2) The motion and statement of evidence shall be served on the state which shall make a reasonable effort to notify the victim prior to the hearing.
"D. Time for a motion. The motion shall be made within the time for filing pre-trial motions specified in Code of Criminal Procedure Article 521, except that the court shall allow the motion to be made at a later date, if the court determines that:
"(1) The evidence is of past sexual behavior with the accused, and the accused establishes that the motion was not timely made because of an impossibility arising through no fault of his own; or
"(2) The evidence is of past sexual behavior with someone other than the accused, and the accused establishes that the evidence or the issue to which it relates is newly discovered and could not have been obtained earlier through the exercise of due diligence.
"E. Hearing. (1) If the court determines that the statement of evidence contains evidence described in Paragraph B, the court shall order a hearing which shall be closed to determine if such evidence is admissible. At such hearing the parties may call witnesses.
"(2) The victim, if present, has the right to attend the hearing and may be accompanied by counsel.
"(3) If the court determines on the basis of the hearing described in Subparagraph (E)(1) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence may be admissible in the trial to the extent an order made by the court specifies *1381 evidence which may be offered and areas with respect to which the victim may be examined or cross-examined. Introduction of such evidence shall be limited to that specified in the order.
"(4) Any motion made under Subparagraph C and any statement of evidence, brief, record of a hearing, or like material made or used in connection with the motion shall be kept in a separate, sealed package as part of the record in the case. Nothing in this Article shall preclude the use of the testimony at such hearing in a subsequent prosecution for perjury or false swearing.
"F. Past sexual behavior defined. For purposes of this Article, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged."
Initially, we note that the trial judge correctly advised defense counsel that a written motion and statement, as required by Art. 412(C), subsections (1) and (2), had not been timely filed. Such a requirement has been found not unconstitutional per se. See Michigan v. Lucas, 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991).
Regardless, the evidence sought to be introduced was irrelevant and inadmissible. Dr. Britton did not say that Zierhut caused the vaginal injury and she did not place any emphasis on the scar as proof that Zierhut had raped his daughter. Neither the scar nor the venereal warts had any bearing on the ultimate issue before the jury, i.e., whether an aggravated rape had been committed by the defendant.
The excluded evidence may have shown that the victim had in fact voluntarily or involuntarily engaged in sexual intercourse with a person or persons other than Zierhut. This is precisely what the rape shield law forbids. The trial judge did not err in ruling as he did.

ASSIGNMENT NO. 2
Here, Zierhut argues that the trial judge wrongly restricted the scope of the defense's questioning on voir dire. Zierhut's counsel wanted to ask potential jurors that if the state proved that the victim had been sexually penetrated, would Zierhut then have to prove that it wasn't him. Such questioning would improperly probe into a prospective juror's opinions concerning evidence and not to his or her qualifications as a possible juror. See State v. Pedroso, 557 So.2d 455 (La.App. 5 Cir.1990), wherein this Court said at page 458:
"Although parties are given wide latitude during the course of voir dire, it has been held that hypothetical questions aimed at determining in advance a juror's opinion concerning the weight of certain evidence are improper. Voir dire may not be used to pry into a prospective juror's opinions concerning evidence to be offered at trial ...
"It is highly improper to ask a potential juror if he would act in a particular way under certain circumstances because such a question seeks to commit him in advance as to his verdict. That type of question is related to the merits of the case rather than to the proper subject of voir dire, the qualifications of the juror."
Furthermore, the trial judge's instructions to potential Zierhut jurors, especially concerning the state's burden of proof and the accused's presumption of innocence, and the judge's final instructions to the jury thoroughly spelled out what the prosecution had to prove and the fact that a defendant is presumed and does not have to prove his innocence.
A trial judge's rulings on the scope of questioning during voir dire should not be disturbed absent a clear showing of abuse of discretion. See State v. Straughter, 406 So.2d 221 (La.1981). In Zierhut's case, there was no such abuse.
It appears, from the record, that Zierhut was convicted mainly on the testimony of the victim and her brother and because of his (Zierhut's) admissions to Sgt. Ulmer at the police station. No reversible error occurred during voir dire or during trial when certain evidence concerning the victim's past sexual history was not allowed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:42.