702 So.2d 680 (1997)
STATE of Louisiana
v.
Henry EVERIDGE.
Nos. 96-KO-2647, 96-K-2665.
Supreme Court of Louisiana.
December 2, 1997.
*681 Archie B. Creech, New Orleans, for Applicant.
Henry F. Everidge, pro se.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Joseph E. Lucore, for Respondent.
TRAYLOR, Justice.[*]
Henry F. Everidge was charged by the grand jury on an indictment for one count of forcible rape in violation of La.Rev.Stat. 14:42.1. Everidge asserted the defense of consent. After a trial by jury, defendant was found guilty as charged and was sentenced as a triple offender to thirty years at hard labor without benefit of probation, parole or suspension for the first two years of his sentence.[1] The Court of Appeal for the Fourth Circuit affirmed the trial court notwithstanding a finding that the trial court erred in excluding testimony of a defense witness. The appellate court ruled the testimony of the excluded witness could not have overcome the evidence that the victim did not consent to the sexual intercourse. The appellate court therefore found the error was harmless and did not affect the verdict. We disagree with the appellate court and find that the exclusion was an error which prejudiced the defendant by preventing him from effectively asserting the defense of consent.

FACTS AND PROCEDURAL HISTORY
The verdict rested on the following facts. The victim testified at trial that at approximately 11:00 p.m. on the night of January 19, 1994, defendant Everidge visited her apartment to use the phone. Everidge concluded the call approximately 20 minutes later and the victim walked him to the door. The victim told the police that Everidge pushed the door closed, clutched her wrists and forced her to her bedroom. She reported that he pushed her onto her bed and in the struggle threw her on the floor, where she landed on the center of her back. The victim maintains that Everidge vaginally raped her and then left her apartment at *682 approximately 12:00 a.m. on the morning of January 20, 1994. The victim immediately telephoned her brother but his girlfriend, Linda Burt, answered. Burt testified that she and the victim's brother arrived at the apartment approximately six minutes later and immediately phoned the police.
The victim reported to the New Orleans Police that Everidge raped her. The police records reveal that the call was received at 1:55 a.m.[2] The police arrived at 2:30 and found victim crying with her clothes and hair in disarray.[3] The police noted that the apartment was neat but the sheets on the bed were wrinkled. Burt, who was with the victim when the police arrived, told the police that the bed was moved, clothes were displaced from the top of the dresser and that she saw a bruise on the victim's lip and blood on her shirt.
The police accompanied the victim to Charity Hospital for a rape examination. Dr. David Benado, the examining physician, testified that the victim reported that Everidge clutched her wrists and pushed her from the front door into the bedroom. He threw her on the floor, where she landed on the center of her back, and vaginally raped her but did not strike or threaten her. The victim initially reported no soreness but upon palpitation reported tenderness in her upper left arm and left buttock. The doctor noted no external trauma typical of rape victims. The doctor testified he was surprised to find no tenderness in the victim's wrists where she claimed Everidge clutched her.
The pelvic examination for semen was negative but Dr. Benado found secretions, odor and discharge indicative of a vaginosis infection. The doctor noticed a red crescent shaped mark on the victim's cervix which, though not typical, could have resulted from the vaginosis infection. He opined that it more likely the result of a blunt trauma, consistent with that caused by a penis during sex. However, Dr. Benado found no lacerations in the victim's vagina which typically result from rape. He testified, however, that the vaginosis produced abnormal secretions which could explain the lack of lacerations. The victim exhibited no other signs of rape. Dr. Benado reported all tenderness was minor enough that it would have subsided by the next day. The only treatment the doctor administered the victim was for the sexually transmitted disease.
At trial, the victim's testimony was inconsistent with her previous reports to the police and Dr. Benado. She testified that Everidge grabbed her by the upper arms and pushed her to the bedroom where he threw her to the bed and floor. They struggled while he held both of her arms, pulled down her pants and underwear and raped her. She testified that she told Dr. Benado that her vagina, arm and back were sore. Dr. Benado's testimony did not substantiate this assertion. The victim testified that the doctor found bruises on her; however, Dr. Benado had stated that he found no signs of trauma except the crescent-shaped spot on her cervix.
According to Everidge, he had been writing to the victim on behalf of her illiterate step-father. Everidge testified that he met the victim briefly when she visited his apartment to meet the man who had been writing to her. Approximately two and one half days after this initial meeting, Everidge, accompanied by Ernest Domino, while walking through the housing project where he and the victim resided, encountered the victim on her porch. Domino left Everidge to purchase a candy bar in the next building and Everidge approached the victim. At this point, Everidge contends that he and the victim made plans to meet that night to have sex. They hugged and kissed while Domino, who was nearby, observed. Everidge testified that they had sex as planned; however, upon his departure he and the victim began to argue because she expected him to remain. Everidge told her that he probably should *683 not have had sex with her and planned to return to his girlfriend and family. At this news, the victim became irate and threatened, "You ain't even going to have a life when I get through with you."
At the conclusion of the State's case, during a hearing outside the presence of the jury, the defense called two witnesses to testify relative to the victim's reputation for truthfulness in the community. One of the witnesses, Ernest Domino,[4] would have also testified regarding a conversation he overheard and witnessed between the victim and Mr. Everidge on the day of the incident. Domino's testimony was that hours before the alleged rape, he saw the victim and Everidge hug and kiss and overheard the victim arrange a rendezvous with the defendant. This would contradict victim's testimony at trial that she had never met with the defendant alone and would also support the defense of consent.
The State objected to the admissibility of the above testimony under La.Code Evid. art. 412, the "rape shield statute," which restricts testimony regarding a victim's past sexual behavior in sexual assault cases. The State further objected that the defense did not timely file its motion for pretrial hearing on the Article 412 evidence. Defense counsel averred that he could not comply with the Article 412 delays due to his recent appointment and difficulty in finding an incarcerated witness.
The court ruled that Domino could only offer character testimony and any testimony regarding what he witnessed on the porch was excluded. Without addressing the relevance of the testimony to the defense of consent, the court ruled the balance of the testimony inadmissible for impeachment purposes because defendant did not lay the proper predicate by asking the victim if she had invited Everidge to her apartment. Additionally, the court ruled that Domino, who was incarcerated at the time of this trial, could not testify in street clothes. Left with a witness dressed in prison garb who could only testify as to victim's character for truthfulness, the defense opted not to call the witness.
The jury found defendant guilty and he was sentenced. The defendant appealed and the Court of Appeal for the Fourth Circuit affirmed the trial court despite a finding that the trial court erred in excluding testimony of defense witness Domino. On appeal, defendant relies on eight assignments of error for reversal of his conviction and sentence. We find merit in Assignment of Error Number 5 wherein defendant contends the trial judge erred in excluding testimony which would contradict that of the victim.
At issue are two evidentiary rulings made by the trial court which excluded defense testimony. The State argued that the testimony be excluded under the Article 412 rape shield statute and hearsay exclusions. Defendant contends that these rulings constitute reversible error. We will discuss each of these objections and the corresponding rulings in that order.

DISCUSSION

Rape Shield Statute
In order to determine if evidence was improperly excluded, we first examine what evidence may properly be excluded under the La.Code Evid. art. 412 rape shield statute. The statute provides in pertinent part:
A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
* * * * * *
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior. *684 Under Article 412, the accused must provide a written in camera motion offering the evidence of specific instances of past sexual behavior he intends to introduce at trial. The motion shall be made within the time for filing pre-trial motions, except that the court shall allow the motion to be made at a later date if the court determines that the evidence is of past sexual behavior with the accused and the accused establishes that the motion was not timely made because of an impossibility arising through no fault of his own.[5]
A defendant's right to present a defense is sanctioned constitutionally and he can testify to or give evidence on any matter relevant to an issue material in the case. State v. Short, 94-0233 (La.App. 4th Cir. 5/16/95), 655 So.2d 790, 793; State v. Trosclair, 584 So.2d 270, 275 (La.App. 1st Cir. 1991), writ denied, 585 So.2d 575 (La.1991). The right of an accused rapist to present a defense is balanced against the victim's interests under the rape shield statute, which is meant to protect the victim of rape from having her sexual history made public. State v. Vaughn, 448 So.2d 1260, 1262 (La.1983). The rape shield law is precisely drawn to exclude evidence of an alleged rape victim's sexual history with persons other that the defendant. State v. Zierhut, 93-673 (La.App. 5th Cir. 6/3/94), 631 So.2d 1378, 1381, writ denied, 94-0607 (La.6/3/94), 637 So.2d 500. Article 412 does not proscribe a defendant's right to claim the defense of consent and put forth evidence to support his defense. Evidence of past sexual involvement between accused and victim of sexually assaultive behavior will be admissible when offered by the accused upon the issue of whether or not the act was consensual. La.Code Evid. art. 412(B); State v. Womack, 592 So.2d 872 (La. App. 2d Cir.1991), writ denied 600 So.2d 675 (La.1992). Past sexual behavior is not limited to sexual intercourse. State v. Davis, 95-801 (La.App. 3d Cir. 12/6/95), 664 So.2d 821, 826.
Once defendant clears the hurdles of La.Code Evid. art. 412, no obstacles remain which prevent him from introducing evidence of his past sexual relations with the victim to support his defense. It is clear that the defendant failed to file a timely written motion to introduce evidence of Article 412 past sexual behavior within the delays for filing pretrial motions. However, we find that this was through no fault of his own. Counsel for the defense informed the judge of his recent appointment and the difficulty he encountered in locating witness Domino. The Code of Evidence mandates that Article 412 evidence will not be allowed after the delays for filing motions but that the court shall allow a late motion upon a determination that the evidence is of past sexual behavior with the accused and the accused establishes that the motion was not timely made because of "an impossibility arising through no fault of his own." It is apparent under the circumstances that defendant could not have filed an in camera motion prior to the day of trial. Defense counsel informed the court that Domino would testify that he was present when the victim invited Everidge to "come back over to her house later on that night" and that he saw the two hug and kiss. Domino testified at the predicate hearing regarding the victim's reputation in the community for "messing with" men and for lying. While we agree that testimony regarding the alleged promiscuity of the victim is exactly what the rape shield statute proscribes, the remainder of the testimony offered at the hearing is admissible and should have been presented to the jury.
The trial court erroneously excluded all evidence regarding past sexual acts between the defendant and victim including testimony regarding the parties' plans to meet and have sex several hours before the alleged rape. Had the trial court properly ruled, it would have allowed the testimony to be introduced at a date later than required by Article 412. Because the testimony clearly falls within Article 412 exception for past sexual behavior, we find that the trial court erred in excluding the evidence based on the rape shield statute.

Hearsay
Next, we delve into whether the trial court properly excluded evidence as hearsay. *685 The court sustained the State's objection to Domino's testimony, ruling that the defense could not impeach the victim with hearsay testimony. The appellate court found the trial court erred in excluding the evidence while it acknowledged Domino's testimony regarding the parties' suggestive behavior and rendezvous plans confected hours before the incident would have impeached the victim.
It appears that the trial court was confused about what actually constitutes hearsay. Hearsay is a statement made out of court offered as evidence in court to prove the truth of the matter asserted by the statement. La.Code Evid. art. 801(C); E.g., State v. Wille, 559 So.2d 1321, 1329 (La.1990); State v. Shoemaker, 500 So.2d 385, 388 (La. 1987); State v. Martin, 458 So.2d 454, 460 (La.1984). Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability. E.g., State v. Doze, 384 So.2d 351, 353 (La.1980); State v. Sheppard, 371 So.2d 1135, 1142 (La.1979); State v. Weedon, 342 So.2d 642 (La.1977). In order to fall within the definition of hearsay, the statement must be offered to prove the truth of the statement's contents. To illustrate this point, the victim stated, "Come over to my apartment tonight" or words to that effect. The statement was not offered to prove any assertion within the statement such as ownership of the apartment, but to establish the fact that the statement was made. We contrast this scenario to one where a witness states that declarant said, "John killed Jane." The matter asserted is that John killed Jane.
Defendant testified regarding his conversation with the victim before the sexual encounter whereas the victim denied speaking with the defendant. Domino would have testified to the fact that the conversation occurred. However, the State repeatedly objected to testimony of Domino as hearsay and the court repeatedly sustained the objections. Domino's testimony is not hearsay. As previously discussed, it was not offered for the truth of the matter asserted and thus does not fall within the definition of hearsay. Because the testimony was not hearsay, it should not have been excluded as hearsay.
For the foregoing reasons, we agree with the appellate court that the trial court erred in excluding the evidence. The testimony was not hearsay evidence offered for the truth of the matter asserted, but was offered because the utterance of the statement would tend to impeach the victim's prior testimony and directly support the defense of consent.
Therefore, because the testimony of witness Domino that the alleged victim and accused were kissing and hugging hours before the sexual encounter and that the victim invited the accused to her apartment to have sex was neither hearsay nor properly excluded under Article 412, the trial court erred by refusing to admit the testimony.

Reversible Error
Having found Domino's testimony regarding the meeting should have been admitted, we must now examine whether the error was harmless and whether it created reversible error. Harmless error occurs where the guilty verdict actually rendered in this trial was surely unattributable to the error. La.Code Crim. Proc. art. 921; E.g., Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081-82, 124 L.Ed.2d 182 (1993); State v. Quatrevingt, 93-1644 (La.2/28/96), 670 So.2d 197, 206; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102. A reviewing court must find beyond a reasonable doubt that excluded evidence could not have affected the jury's verdict for the error to be harmless. State v. Sanders, 93-0001(La.11/20/94), 648 So.2d 1272, 1291. The defendant is deprived of his defense and a fair trial where the court erroneously excludes defense witness testimony that would have substantially helped the defense. State v. Shoemaker, 500 So.2d 385, 389 (La.1987). Where the excluded testimony is crucial to the defense theory, a conclusion of reversible error would be well founded. State v. Caldwell, 504 So.2d 853, 856 (La.1987); State v. Rankin, 465 So.2d 679, 683 (La.1985).
The appellate court acknowledged that Domino's testimony was material to the defense theory but found the error harmless. The court narrowly viewed the value of Domino's testimony and found that the testimony *686 would not have helped defendant overcome the evidence of rape. The only witnesses to testify regarding the alleged rape were the victim and the defendant. Domino's testimony offered the only evidence which could have corroborated that defendant's version of the events on the night in question and refuted the victim's account. The trial court should have allowed the jury decide exactly how much credence they would lend to the testimony. In such a case as this where credibility is of utmost importance, we cannot say that the improperly excluded corroborating evidence did not affect the verdict. Consequentially, we cannot find beyond a reasonable doubt that it did not; therefore, we find that the error was not harmless.

CONCLUSION
We find that the lower court erred. The trial court prevented defendant through its erroneous ruling from asserting his defense and, therefore, deprived him of a fair trial. Because the improperly excluded evidence tends to exculpate the defendant, we cannot say that such a prejudicial error was harmless. We find that defendant was prejudiced and was not provided a fair trial.

DECREE
For the foregoing reasons the conviction and sentence of Henry F. Everidge is reversed and the case is remanded to the district court for new trial.
REVERSED; REMANDED.
NOTES
[*] LEMMON, J., not on panel. See Rule IV, Part 2, Section 3.
[1] Defendant was previously convicted on August 14, 1987 of possession of cocaine in violation of La.Rev.Stat. 40:967 and on December 18, 1991 as a felon in possession of a firearm in violation of La.Rev.Stat. 14:95.1
[2] We note that there is approximately a two hour discrepancy between the testimony of the victim, Linda Burt and the Police phone log.
[3] The Police noted that the victim's clothes were in disarray and that her shirt was unbuttoned, but the victim testified at trial that Everidge only pulled down her pants and underwear when he raped her. She said that he did not take off her shirt or attempt to do so.
[4] The other potential character witness was never called and his testimony is not at issue.
[5] Delays for filing pretrial motions are set forth in La.Code.Crim.Proc. art. 521.