769 So.2d 162 (2000)
STATE of Louisiana, Appellee,
v.
David Earl ROBERTS, Appellant.
No. 33,814-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2000.
*163 Peggy J. Sullivan, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry Jones, District Attorney, John Michael Ruddick, Assistant District Attorney, Counsel for Appellee.
Before BROWN, STEWART and PEATROSS, JJ.
BROWN, J.,
Defendant, David Earl Roberts, was convicted by a unanimous jury of the aggravated rape of his seven-year-old stepdaughter. After rejecting a motion for post-judgment verdict of acquittal, the trial court imposed the mandatory sentence of life imprisonment without benefit. Defendant appeals claiming the evidence was insufficient, and the trial court erred regarding jury instructions and the admission of a videotaped interview of the victim. Finding no error, we affirm.

Discussion

Sufficiency of the Evidence
According to defendant, a rational jury could not have convicted him based upon the evidence. Defendant notes that the victim was the only witness to the crime and that she was unable to identify him in court as the perpetrator of the crime. He also claims that although the evidence shows that the child's vagina (and anus) had been penetrated, it does not prove that the object of penetration was a penis. Defendant further asserts that the testimonies of the child, mother and experts were inconsistent, bizarre and unbelievable. He suggests in brief that the perpetrator may have been the victim's grandfather.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), constitutional due process requires a reviewing court to look at the probative nature of the evidence, in a manner most favorable to the prosecution, to insure that *164 a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. When the record of historical facts support conflicting inferences, a reviewing court must presume that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. Jackson, supra; State v. Bosley, 29,253 (La. App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
Aggravated rape is the act of anal or vaginal sexual intercourse committed without the person's lawful consent because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
La. R.S. 14:42(A); State v. Ingram, 29,172 (La.App.2d Cir.01/24/97), 688 So.2d 657, writ denied, 97-0566 (La.09/05/97), 700 So.2d 505.
The victim's mother learned of the sexual molestation of her seven-year-old daughter when she observed her three-year-old daughter hitting her dolls and using profanity while doing so.[1] The toddler told her mother that her father had said those things to her older sister and that he had done things to her sister.[2] The mother then questioned her seven-year-old daughter, who broke down and described various sexual acts that her "daddy" had performed, including oral, anal and vaginal sex.[3] The victim related that her father told them they could never tell and that if they did, he would kill the girls and their mother. Approximately ten days later, when she felt safe in moving out of the home she shared with defendant, the mother reported the sexual abuse to the authorities.
Although the victim did not recognize defendant in the courtroom at trial, she stated that the perpetrator was her stepfather, David Earl Roberts. At trial, it was established that the victim had poor eyesight and did not have her glasses, which had recently been broken. It was also shown that defendant had significantly changed his appearance. Defendant, who at the time of his arrest had long hair and a beard, had gained weight, cut his hair and shaved off his beard.[4]
The record reflects that the victim was seven years old at the time of the latest assault. Dr. O'Boyle's physical examination revealed that the child had been penetrated in a manner consistent with penetration by a penis. Dr. O'Boyle also testified that the young girl's anus *165 showed definite signs of penetration. The victim testified that defendant put his penis in her mouth, vagina and anus and that he had ejaculated ("put gooey stuff with his `wee wee' in her tee tee and in her mouth which made her gag").
Defendant also contends that the testimony is inconsistent and bizarre. He characterizes as contradictory the testimony of the victim, her mother and the experts. The record does not support this argument. The alleged conflicts in testimony present no real contradictions on the basic questions.[5] In any event, in reviewing the evidence for sufficiency, this court must accept the jury's credibility calls and inferences drawn from conflicting evidence when those determinations are reasonably supported by the record. We may not second-guess the jury's resolution of the factual conflicts, but consider only whether the evidence deemed credible by the jury is legally sufficient to establish each essential element of the offense beyond a reasonable doubt. State v. Bosley, supra; State v. Baker, 28,152 (La.App.2d Cir.05/08/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/06/96), 684 So.2d 925.
Finally, defendant suggests that he has been misidentified as the perpetrator, suggesting that it may well have been the victim's grandfather, since she also refers to him as "daddy." The victim assertively identified as the perpetrator her stepfather, "David Earl." She also described a marking near defendant's penis as a "mole" which was corroborated by the victim's mother, although she characterized it more as a distinct "marking" near his penis in the pubic hair.
The testimony of a victim alone is sufficient to prove the elements of the offense of aggravated rape. State v. Ingram, supra; State v. Walters, 26,888 (La. App.2d Cir.05/10/95), 655 So.2d 680. In this case, however, that testimony was corroborated by medical and physical evidence.
The evidence, viewed in a light most favorable to upholding the jury's verdict, was clearly sufficient to convict defendant of aggravated rape.

Jury Instructions
Defendant claims error in the trial court's refusal to give the following two jury instructions:
(1) By law the defendant is precluded from offering evidence of specific past sexual contact of the alleged victim with persons other than the defendant upon the issue of whether the defendant is the source of the injury except in instances within seventy-two hours prior to the time of the alleged offense. Code of Evidence Article 412; State v. Ziehut[Zierhut], 93-673 (La.App. 5th Cir.02/09/94), 631 So.2d 1378.
(2) Statements admitted by the Court of the child which were testified to in Court by medical and other experts are admissible only to show the basis of the expert's opinion but are not admissible as evidence of the truth of the facts stated. State v. Hilburn, 512 So.2d 497 (La.App. 1st Cir.1987).
The trial court rejected the first requested special charge to the jury. The trial court agreed that the second requested jury charge was a correct statement of the law, but noted that its instructions had a similar, although not identical, statement.
La.C.Cr.P. art. 802 provides that the court shall charge the jury as to the *166 law applicable to the case. Article 802 obligates the trial court to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Johnson, 438 So.2d 1091 (La.1983); State v. Marse, 365 So.2d 1319 (La.1978); State v. Williams, 606 So.2d 1387 (La.App. 2d Cir.1992).
The thrust of defendant's argument is that because the jury heard testimony from Dr. Vigen regarding a report by Dr. Stephenson that noted that the victim had recalled two incidents of sexual molestation involving persons other than defendant, the jury should have been instructed that the rape shield provisions of La. C.E. art. 412 did not allow defendant to present evidence of other specific instances of sexual conduct. The trial court disagreed, noting "the jury is not entitled to be instructed as to the existence of a rape shield law, counsel."[6]
Defendant filed several article 412 motions, some of which were filed under seal. There is an allegation that the victim's mother and her twin sister may have been molested by their father, the victim's grandfather. The motions also requested that the child be examined by a court-appointed psychologist. The court complied with this request, appointing Dr. Vigen to examine the victim.
At trial, counsel elicited testimony from Dr. Vigen regarding the alleged incidents involving persons other than defendant. Specifically, defendant read a statement in a report by psychologist Dr. Bobby Stephenson wherein he reported that the victim stated that there were incidents with other people who "would hold her down and her dad would do stuff to her and would make her touch him." According to Dr. Vigen, the victim also reported to her mother that she was taken to another house and assaulted by a man and woman in formal attire and that money was exchanged.
Defendant does not elaborate in his brief the other specific instances to which he is referring. In fact, when defendant raised his objection regarding the judge's refusal to give the requested instruction, the trial court stated that it did not intend to offer the instruction "unless there's some other evidence that would indicate some other sexual contact of the young lady." In response, defense counsel stated, "I'm precluded fromI'm precluded from even bringing it up. But I think the jury has a right to know that I'm precluded from bringing it up."
The record reflects that defense counsel evaded every question asked by the court regarding the alleged other sexual contact involving the victim, even inquiries posed outside the presence of the jury. On each occasion, defense counsel would respond that he was precluded by law from mentioning such conduct.
*167 Article 412 is intended primarily to protect the victim from improper character attacks by the accused. Comment (g) La. C.E. art. 412. Obviously the statute's purpose is to prevent or "shield" sex crime victims from having irrelevant, prejudicial and embarrassing information about their past sexual activity brought out in trial.
It is apparent that defendant wanted the jury instructed regarding the rape shield law to make it appear as though there was evidence that someone else had molested the victim but that he was precluded from bringing such evidence out at trial. As noted above, the record does not reflect that defendant had such evidence and the court correctly recognized this and refused to charge the jury as requested.
Article 412(B)(1) sets forth the circumstances and means to present evidence of other sexual conduct of the victim and provides that the jury be instructed regarding the limited purpose of admitting such evidence. Again, there is no indication in the record that defendant had any evidence which fell within the exceptions listed in article 412 and accordingly, he was not entitled to an instruction regarding allegations of other sexual conduct.
As to the second requested instruction, defendant contends that the trial court erred in failing to include his charge which would have explained to the jury that the statements the victim made to experts were not to be considered evidence of facts, but merely the basis of the experts' opinions. In comparing the requested charge with that given the jury, we note that the general charge given by the trial court was not substantially similar to the requested instruction.
A requested special jury charge shall be given by the court if it does not require qualification, limitation or explanation and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La.C.Cr.P. art. 807. Failure to give a special charge to the jury constitutes reversible error only when there is a miscarriage of justice, prejudice to substantial rights of the defendant or a violation of a constitutional or statutory right. State v. Edwards, 25,963 (La. App.2d Cir.05/04/94), 637 So.2d 600.
There was extensive expert testimony regarding the victim in this case. Most of the testimony simply corroborated that the victim had been molested. The record, however, does include several references by the experts to statements made by the young victim. As pointed out by defendant, statements made by the victim to an expert regarding her molestation are considered hearsay and are admissible for very limited purposes. Thus, we find that the trial court erred in refusing to instruct the jury as requested by defendant.
However, because the victim herself presented detailed and graphic testimony regarding her molestation, specifically regarding defendant's role in her sexual assault, we find that the failure of the trial court to instruct the jury that the testimony of the experts was admissible only to show the basis of their opinion was harmless error. See State v. Coleman, 95-1890 (La.App. 4th Cir.05/01/96), 673 So.2d 1283; State v. Soler, 93-1042 (La.App. 5th Cir.04/26/94), 636 So.2d 1069.

Admission of Videotaped Interview
Defendant's final assignment of error concerns the admission of a videotaped interview of the victim by Investigator Renee Smith. His objection alleges that the investigator used leading questions. The record indicates that defendant objected based on the officer's question of whether the sexual molestations occurred in Sterlington. Defense counsel's objection to that portion of the videotape being played to the jury was overruled and the entire tape was shown.
A leading question is one which suggests the answer the witness is to give. State v. White, 254 La. 389, 223 So.2d 843 (1969). The use of leading questions is largely within the trial court's discretion *168 and only clear abuse which prejudices the defendant's rights will justify reversal of a conviction. Id.; State v. Hattaway, 28,060 (La.App.2d Cir.05/08/96), 674 So.2d 380; State v. Essex, 618 So.2d 659 (La.App. 2d Cir.1993), writ denied, 96-1900 (La.01/10/97), 685 So.2d 141.
We find that the question posed by the investigator to the then seven-year-old victim was not such as to render the answer untrustworthy. The trial court did not err in allowing the entire interview to be shown.

Error Patent
Since defendant was informed of the prescriptive period for seeking post-conviction relief, the law has changed and rather than three years as told to defendant, the time period is now two years. La. C.Cr.P. art. 930.8. The district court is hereby instructed to send appropriate written notice to defendant within 30 days of this opinion and to file proof of defendant's receipt of such notification in the record.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.
NOTES
[1] The language used by the toddler was something to the effect of, "shut up, bitch."
[2] The three-year-old is defendant's daughter; the elder child is his stepdaughter.
[3] Dr. Meade O'Boyle, an expert in child abuse who conducted a physical examination of both girls, found definite physical symptoms of the seven-year-old's sexual abuse but not any signs that the toddler had been sexually molested although the elder girl had related to her mother that defendant had done the same acts with her younger sister.
[4] We note that the record does reflect a question posed by the young victim to the defense attorney regarding whether "they" had shaved defendant's face.
[5] The fact that the victim saw defendant with a gun, but the mother had not seen a gun is not surprising since the mother also failed to recognize that her child had repeatedly been sexually assaulted over the course of several years. Likewise, Dr. Susan Vigen, one of the treating psychologists, testified on cross-examination that the child had mentioned two incidents involving other people. Dr. Vigen refused to categorize these reports as bizarre, stating that she did not have enough information to determine their accuracy. Defendant was apparently trying to use this testimony to discredit the victim's testimony and the jury obviously did not agree with defendant's appraisal.
[6] La. C.E. art. 412, which addresses evidence of a victim's past sexual behavior in sexual assault cases, provides:

(A) Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
(B) Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of the semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
(2) Evidence of past sexual behavior with the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
* * *
(F) Past sexual behavior defined. For purposes of this Article, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged.