Judgment rendered November 18, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,550-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TRAVIONNE BRADLEY                           Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 339,304

Honorable Charles Tutt, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By:  Peggy J. Sullivan

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

MONIQUE Y. METOYER
WILLIAM J. EDWARDS
ALEXANDRA L. PORUBSKY
Assistant District Attorneys

* * * * *

Before MOORE, GARRETT, and STEPHENS, JJ.

**MOORE, C.J.**

The defendant, Travionne Bradley, was indicted by a grand jury on five counts of first degree rape (formerly "aggravated rape") in violation of La. R.S. 14:42. All five counts involved one victim, S.P., and occurred on December 8, 2015. Following trial, the jury convicted Bradley of one count of first degree rape and four counts of second degree rape (formerly "forcible rape"), in violation of La. R.S. 14:42.1. Defense counsel requested that the jury be polled with respect to the first degree rape conviction. The poll indicated that the guilty vote was 11-1. Counsel did not request a jury poll for the second degree rape convictions.

Bradley was subsequently sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for the first degree rape conviction and 40 years at hard labor for each one of the second degree rape convictions. The court ordered all sentences to be served concurrently.

Following a hearing on a motion to reconsider sentence, the court amended the life sentence without benefits by removing the parole prohibition due to the defendant's age (17) at the time of the offense.

This appeal followed.

## FACTS

On December 8, 2015, the victim, S.P., and her one-year-old daughter were staying at her boyfriend's apartment at 1920 Earl Street in Shreveport, Louisiana. S.P.'s boyfriend, Quincy, was in jail. That morning, she asked a neighbor, "Tee," to call Quincy's probation officer about lifting a bond restriction. She also asked Tee for a cigarette. Later that day, Tee came to

the apartment and gave her a partially smoked cigarette, and she told S.P. she would bring her another cigarette later.

Approximately 30 minutes passed when S.P. heard a knock on the door. Without opening the door, she asked who was there. Unable make out what the person said, S.P. said, "He not here," referring to her boyfriend, Quincy. The knocking stopped.

Later, there was another knock at the door. This time, S.P. assumed it was Tee bringing her another cigarette. Although she could not understand the answer when she asked who was there, she opened the door.

As she opened the door a man with blonde-tipped dreadlocks covering his face and another man behind him forced their way in the apartment and knocked S.P. to the floor, turning off the lights before she could get a good look at them. One intruder asked, "Where is it?" When S.P. said she did not know what they were talking about, they duct-taped her mouth and her wrists behind her back and brought her into the bathroom, repeatedly demanding her to tell them where the guns and money were located.

S.P.'s daughter was sleeping in another room when the intruders forced their way in the apartment. One of the two intruders remained with S.P. in the bathroom while the other began searching through the apartment.

S.P. could not see the other man's face before the lights were turned off. However, she identified him as the defendant by describing the feel of his hair as "nappy twists" with no hanging dreads.

In the unlit bathroom, the defendant did not allow S.P. to see his face. With her back to him, he pulled S.P.'s jeans and underwear down, and began to rape her, penetrating her vaginally from behind. She testified that she felt

the barrel of a gun against her head and back while being held in the bathroom and later in the bedroom.

While S.P. was being raped in the bathroom, the baby began to cry in the other room. The other intruder brought the baby to the bathroom and placed her in the sink. The baby continued to cry, so the defendant removed the duct tape from S.P.'s mouth and hands, and S.P. held the crying baby as he continued to rape her.

The defendant then led S.P. from the bathroom to the bedroom and put her on the bed. He continued to rape her vaginally, orally, and anally keeping her face covered with her shirt. S.P. testified that the defendant ejaculated inside her vagina. During this time, her daughter was in the bed beside her. The other intruder entered the bedroom and also penetrated her vaginally. She testified that, after three or four minutes, he ordered her to call him "Debow." She said she obeyed and started calling him Debow, at which time he pulled out and ejaculated on the bed sheet.

The men left the bedroom and returned with a dildo they found in a hallway dresser, and one of them used it to penetrate her. S.P. testified that she believes that it was the defendant who penetrated her with the dildo because he was the one who started things in the bathroom and who, she said, "was more into it"; she believed that the other intruder had to be "boosted up" to participate.

Before leaving, the men found some Moscato wine in the kitchen and poured it on her before leaving the house. After the intruders left, S.P. put on some clothes and walked to a liquor store down the street, where she called her mother. Her mother took S.P. to the hospital, where she received an examination by a SANE nurse and spoke with police.

Michelle Vrana is the DNA section supervisor at the North Louisiana Crime Lab. At trial, she testified regarding her comparison of the DNA results from the physical evidence recovery kit ("PERK") taken from S.P. at the hospital to the samples obtained from the defendant. Vrana testified that the likelihood of the DNA contributor being someone other than the defendant is 1 in 364 quadrillion. The defendant could not be excluded as the DNA contributor to the vaginal or cervical samples taken from S.P. during the exam.

Following trial, the jury found the defendant guilty of the first count of first degree rape and four counts of second degree rape. The jury was then polled only as to its verdict for the conviction of first degree rape, revealing a vote to convict of 11-1. As previously stated, defense counsel did not request a poll of the jury on the convictions of second degree rape.

The defendant filed motions for post-verdict judgment of acquittal and for a new trial, which were denied.

For the conviction of first degree rape, the court initially sentenced the defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. For each of the four convictions of second degree rape, the court sentenced him to 40 years per count, with all sentences to run concurrently.

The defendant filed a motion to reconsider sentence. The trial court denied this motion in part, but removed the prohibition against parole eligibility on the conviction for first degree rape due to the defendant's age at the time of the offense.

This appeal followed.

**DISCUSSION**

By his first assignment of error, the defendant alleges that Louisiana's Constitution and criminal statutes that allow a conviction with a verdict of less than all 12 jurors violate the equal protection clause of the United States Constitution.

After the jury verdicts were read in open court, defense counsel said: "Your honor, as to count one, we would request a polling of the jury."  As noted above, the result of the polling was that 11 jurors voted to convict Bradley on count one, and one juror voted to acquit.  The transcript indicates that the court clearly instructed the jury to respond to the poll only with respect to the count one (first degree rape) conviction, stating: "It's just on count one, only on count one, did you vote to convict on count one?"  No request for polling on the second degree rape convictions was forthcoming from the state or the defense.

While Bradley's direct appeal was pending, the U.S. Supreme Court held that the Sixth Amendment right to a jury trial, as incorporated into state law by the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense in both federal and state courts.  *Ramos v. Louisiana*, __ U.S. __, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020).

With the *Ramos* decision, the U.S. Supreme Court has ruled definitively that non-unanimous jury verdicts are unconstitutional. Furthermore, as recognized in *Ramos*, the court's ruling invalidates the non-unanimous convictions of defendants who preserved the issue for review in cases still on direct review.  *Ramos*, __ U.S. at __, 140 S. Ct. at 1406-08; *see also*, *Griffith v. Kentucky*, 479 U.S. 314, at 328, 107 S. Ct. 708, at 716 (1987) ("a new rule for the conduct of criminal prosecutions is to be applied

retroactively to all cases, state or federal, pending on direct review or not yet final"). Hence, the *Ramos* holding applies in this case and invalidates the defendant's conviction for first degree rape by a non-unanimous jury verdict.

Accordingly, we hereby vacate the defendant's Count 1 conviction and sentence for first degree rape, and we remand this matter to the trial court for a new trial.

Bradley further argues that his four convictions for second degree rape should also be reversed because the 11-1 verdict on his first degree rape conviction "calls into question the unanimity of the remaining four counts." The record does not indicate that Bradley's convictions for second degree rape were by a non-unanimous jury vote; counsel did not request that the jury be polled with respect to those convictions.

In *State v. Norman*, 20-00109 (La. 7/02/2020), 297 So. 3d 738, the record showed that the district court ceased polling the jurors after the first 10 jurors. Hence, it was not known whether the jury verdict was unanimous even though counsel had requested polling for the conviction for conspiracy to commit second degree murder. The supreme court remanded the case to the trial court with an order to conduct further proceedings to ascertain whether the verdict was unanimous. *Id.*[1]

In *State v. Fortune*, 2019-0868 (La. App. 4 Cir. 8/12/2020), __ So. 3d __, the defendant appealed her conviction for manslaughter arguing that the non-unanimous (10-2) jury verdict violated the Sixth and Fourteenth Amendments of the United States Constitution. The jury was not polled, nor

---

[1] We note, however, Chief Justice Johnson's dissent: "We can have no confidence in the result of an inquiry into individual jurors' votes almost four years after trial. Therefore, I * * * would simply remand for a new trial."

6

did the court minutes indicate the verdict count.  Both the state and the defense counsel conceded, however, that the guilty verdict for manslaughter was 10-2.  The prosecutor argued that the two dissenting votes were in support of a guilty as charged verdict of conspiracy to commit second degree murder as opposed to the votes in support of not guilty.

Following *State v. Norman*, *supra,* the court remanded the matter to the district court with instructions to review the record for the purpose of confirming whether the verdict was, in fact, non-unanimous.  *Id.* at 2.

Unlike the circumstances in *State v. Norman*, *supra*, and *State v. Fortune, supra,* the record in this case clearly demonstrates that defense counsel made the conscious decision not to poll the jury regarding the four convictions for second degree rape.  The matter was clearly before the parties and the court gave defense counsel the opportunity to make a request to have the jury polled on those convictions.

In *State v. Phillips*, 337 So. 2d 1157 (La. 1976), the supreme court held that where the record is silent as to any request made by the defendant to poll the jury and as to any denial of such request by the court, and the defendant made no contemporaneous objection to the lack of polling, the matter cannot be considered on appeal.  Similarly, in *State v. Green*, 10-0008 (La. App. 4 Cir. 11/17/10), 52 So. 3d 253, the court held that the defendant lacked standing to assert an appellate challenge of a non-unanimous jury verdict based on his failure to poll the jury.[2]

Accordingly, we conclude that this matter is deemed to be waived.

---

[2] We also note that a panel from this court recently held that failure to poll the jury neither warrants reversal nor constitutes ineffective assistance of counsel because the law does not require jury polling in criminal cases.  *State v. Copeland*, 52,742 (La. App. 2 Cir. 9/25/19), 280 So. 3d 848.

By his second assignment of error, the defendant complains that the trial court infringed on his rights of confrontation and cross-examination guaranteed by the Sixth Amendment of the U.S. Constitution and Article I, § 16 of the Louisiana Constitution by ruling that he could not inquire as to whether or not he and the complainant had previously engaged in consensual sexual acts.

The state had filed a motion to prohibit the defendant from referring to or questioning the victim about her past sexual conduct in violation of Louisiana's rape shield law, La. C.E. art. 412. Defendant filed a motion to introduce evidence of past sexual relations between him and S.P., generically alleging they had sexual contact some time a month or so earlier. He argues that the trial court's exclusion of evidence of a past sexual relationship between him and the victim would effectively require him to take the stand and assert a defense of consent before he could cross-examine the victim regarding the prior relationship.

After a hearing, the trial court initially denied the state's motion. Later, the matter was revisited and the court asked defense counsel what evidence she planned to introduce regarding the alleged prior sexual contact. Counsel said she would ask S.P. if she knew the defendant and whether they had a prior sexual relationship. The court asked how such testimony would aid in establishing "consent" in the instant case, where a weapon was used. Counsel replied that the prior sexual relationship "spilled over to these events."

There was no testimony offered by the defendant of the nature of the prior contact; however, in his statement to police, the defendant alleged that in November 2015, S.P. was at a party in which she stripped and had sex

8

with multiple individuals.  These allegations were never raised in the motion or supported by any witnesses.

The trial court then reversed its prior ruling and granted the state's motion, concluding that the alleged prior incident was irrelevant, that it was prejudicial, and that prejudice outweighed any possible relevance.  The only effect of such evidence, it found, would be to elicit an emotional response or confuse the jury.

Bradley argues that this ruling resulted in a violation of his rights under the Fifth Amendment of the U.S. Constitution, and Article I, § 16 of the Louisiana Constitution.  He contends that La. C.E. art. 412 does not exclude using cross-examination of the victim as a vehicle to present evidence of consent.  The trial court, he argues, could have limited the inquiry to the questions that counsel for Bradley posed to the court at the pretrial hearing, namely, whether S.P. knew the defendant; whether there was a prior relationship with him; and whether that relationship was sexual in nature.  The trial court's refusal to allow such cross-examination infringed on his constitutional rights.

The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him."  This right is secured for defendants in state as well as federal criminal proceedings.  *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State v. Vaughn*, 448 So. 2d 1260 (La. 1983); *State v. Authier*, 46,903 (La. App. 2 Cir. 4/25/12), 92 So. 3d 494, *writ denied*, 12-1138 (La. 11/2/12), 99 So. 3d 662.  The confrontation clause of our state constitution directly affords each accused the right "to confront and cross-

examine the witnesses against him[.]" La. Const. art. I, § 16; *State v. Authier*, *supra*.

La. C.E. art. 611(B) provides that a witness "may be cross-examined on any matter relevant to any issue in the case, including credibility." Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Ultimately, questions of relevancy and admissibility are discretion calls for the trial judge, and determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. *State v. Lawrence*, 45,061 (La. App. 2 Cir. 3/3/10), 32 So. 3d 329, *writ denied*, 10-0615 (La. 10/8/10), 46 So. 3d 1265; *State v. Mosby*, 595 So. 2d 1135 (La. 1992).

Generally, a defendant may attack the credibility of a witness by examining him or her concerning any matter having a reasonable tendency to disprove the truthfulness of his or her testimony. La. C.E. art. 607(C). However, the right of an accused sex offender to present a defense must be balanced against the victim's interests under La. C.E. art. 412, which is intended to protect a victim of a sexual assault from having his or her sexual history made public. *State v. Everidge*, 96-2665 (La. 12/2/97), 702 So. 2d 680.

La. C.E. art. 412(A)(1) states that "when an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence

10

of the past sexual behavior of the victim is not admissible." Thus, in a prosecution for sexually assaultive behavior, La. C.E. art. 412 prohibits the introduction of evidence of the victim's past sexual behavior, with certain limited exceptions. *State v. Authier*, *supra*. The purpose of the rape shield law is to "protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior." *State v. Williams,* 05-1560 (La. 4/24/06), 927 So. 2d 266, 267, *quoting Michigan v. Lucas*, 500 U.S. 145, 146, 111 S. Ct. 1743, 1745, 114 L. Ed. 2d 205 (1991).

La. C.E. art. 412(A)(2)(b) provides that when an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible, except for evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior. In *State v. Everidge, supra*, the Louisiana Supreme Court considered this exception to the rape shield law where the defendant was charged with one count of forcible rape in violation of La. R.S. 14:42.1. The defendant asserted the defense of consent, claiming that he and the victim had discussed having sex the same day the alleged rape occurred, and testified at the trial that he and the victim had sex as planned. At the conclusion of the state's case, in a hearing outside the presence of the jury, the defense called a witness who would testify regarding the conversation he overheard between the victim and the defendant on the day of the incident. The witness's testimony was that hours before the alleged rape, he saw the victim and the defendant hug and kiss, and overheard the victim arrange a rendezvous with the defendant. The trial court excluded that evidence, pursuant to La. C.E. art. 412, and the fourth circuit affirmed. The Louisiana

Supreme Court reversed the decision of the appellate court, and found that the exclusion was an error which prejudiced the defendant by preventing him from effectively asserting the defense of consent. *Id*. at 684.

In this case, Bradley asserts that he had a prior sexual relationship with the victim, S.P., sometime between October and December 2015. Counsel argued that evidence of the past relationship would be probative because if there was consensual contact in the past, "that consensual contact may have spilled over to these events."

The trial judge concluded that the evidence of a past consensual relationship could be admitted only if the defense was arguing the victim's consent to the sexual activity at issue in the case. It appears that the defendant first wanted to elicit testimony of S.P.'s prior sexual behavior (possibly with the defendant) a month earlier, and then decide if he wanted to allege consent. The trial court found that any evidence of a past consensual sexual relationship was irrelevant to the instant offense, where Bradley used a weapon, and distinguished the facts from *State v. Everidge, supra*. It further found that such testimony would not be probative toward the matter of consent on December 8, 2015. The prior alleged party incident occurred more than a month before the instant offense, and the defendant offered no corroborating testimony from others at the alleged party (unlike *Everidge, supra*). Such evidence, it concluded, would merely confuse the jury and would be prejudicial. The trial judge also noted that Bradley's "Motion to Introduce Evidence of Past Sexual Relationships Between Defendant and Complainant" did not provide specific details regarding the defense of consent, and did not specifically address the date of the incident at issue, December 8, 2015.

12

On review, we conclude that the trial court's ruling was correct and it did not err by excluding evidence of prior sexual intercourse between S.P. and the defendant. That evidence is simply not probative to a determination of whether the defendant engaged in sexually assaultive behavior with S.P. without her consent on December 8, 2015, as the trial court found. Even if such evidence was erroneously excluded, the error was harmless in light of the evidence of S.P.'s lack of consent on the date of the instant offense.

On error patent review, we notice that the sentences imposed for second degree rape are illegally lenient. At the time Bradley's sentence was imposed, La. R.S. 14:42.1(B) required, that "[a]t least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence."[3] The record shows that the trial court did not prohibit benefits for the first two years of Bradley's sentences for second degree rape, and thus the sentences are illegally lenient.

Because the language of the sentencing provision gives the sentencing judge discretion in determining the exact length of time that benefits were to be withheld, the defendant's sentence must be vacated and the case remanded for resentencing in compliance with La. R.S. 14:42.1. *State v. Scott*, 50,920 (La. App. 2 Cir. 11/16/16) 209 So. 3d 248, *writ denied*, 2017-0353 (La. 11/13/17), 229 So. 3d 478; *State v. Drew*, 47,531 (La. App. 2 Cir. 11/14/12), 107 So. 3d 478. Accordingly, the sentences imposed for second degree rape are hereby vacated and we remand the case for resentencing.

---

[3] The sentence for second degree rape was amended by 2020 La. Act 32 (approved June 4, 2020) to read as follows:

B. Whoever commits the crime of second degree rape shall be imprisoned at hard labor, without benefit of probation, parole, or suspension of sentence, for not less than five nor more than forty years.

**CONCLUSION**

For the foregoing reasons, the defendant's conviction and sentence for first degree rape (count 1), are vacated and set aside. We remand the matter to the trial court for a new trial on Count 1.

The convictions for second degree rape are affirmed. For the reasons stated above, the sentences for the second degree rape convictions are vacated, and we remand for resentencing in accordance with the applicable restrictions on parole, probation and suspension of sentence.

**FIRST DEGREE RAPE CONVICTION AND SENTENCE VACATED AND REMANDED FOR NEW TRIAL; SECOND DEGREE RAPE CONVICTIONS AFFIRMED, BUT SENTENCES VACATED AND REMANDED FOR RESENTENCING.**