STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 KA 1110

STATE OF LOUISIANA

VERSUS

MELANIE BARNETT CURTIN

*EW*
*SMR*

Judgment Rendered: __October 5, 2023__

Appealed from the
21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket No. 40759

The Honorable Brian K. Abels, Judge Presiding

Julie C. Tizzard
New Orleans, Louisiana
John S. McLindon
Brant M. Mayer
Baton Rouge, Louisiana

Counsel for Defendant/Appellant,
Melanie Barnett Curtin

Jeff Landry
Attorney General
Christopher N. Walters
Grant L. Willis
Assistant Attorneys General
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellee,
State of Louisiana

BEFORE: GUIDRY, C.J., WOLFE, AND MILLER, JJ.

Guidry, C.J., Dissents in part and assigns reasons.

**MILLER, J.**

A grand jury indictment charged the defendant, Melanie Barnett Curtin, with aggravated rape[1] (count I), a violation of La. R.S. 14:42(A)(5); and principal to video voyeurism (count II), a violation of La. R.S. 14:24 and 14:283(A)(1)[2] and (B)(3). She pled not guilty. Following a jury trial, a jury found the defendant guilty as charged on both counts by unanimous verdict. On count I, she was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On count II, she was sentenced to a concurrent term of five years at hard labor without benefit of parole, probation, or suspension of sentence. She filed a motion for post verdict judgment of acquittal, two motions for new trial, and a motion for reconsideration of the sentence imposed on count I, which were all denied by the trial court.

The defendant now appeals contending: (1) the evidence was insufficient to support the convictions; (2) the trial court erred in admitting evidence under Louisiana Code of Evidence article 404(B); (3) the trial court erred in excluding evidence under Louisiana Code of Evidence article 412; (4) the trial court erred in denying the defendant's motion for new trial when it held that post-trial newly discovered evidence was inadmissible under Louisiana Code of Evidence article 412; (5) the trial court erred in sending the jury back to deliberate after they sent the court a note indicating they were deadlocked; and (6) the sentence on count I is excessive. For the reasons that follow, we vacate the defendant's convictions and sentences and remand this case for a new trial.

---

[1] The offense of aggravated rape was renamed "first degree rape" by 2015 La. Acts Nos. 184, §1 & 256, §1. The offenses charged herein pre-date the amendment.

[2] Louisiana Revised Statutes 14:283(A)(1) was subsequently amended by 2018 La. Acts No. 630, § 1 and 2021 La. Acts. No. 186, § 1. The defendant was charged under the version of the statute in effect prior to these amendments.

# FACTS

On the night of November 7, 2014, R.S.[3] texted the defendant to invite her to R.S. and Dennis Perkins's ("Perkins") house. R.S. and Perkins were married at the time.[4] On that night, between 8:51 p.m. and 10:45 p.m., R.S. texted the defendant the following messages: "Lol y'all should've come over!"; "[Perkins] wants to know if y'all want to come watch a movie?"; "No not too late! Y'all are more than welcome!"; "So are y'all going to come over?"; and "Come over[.]"[5] In reply to R.S.'s text messages, the defendant asked two times whether it was too late to go over. The defendant also texted that she had been drinking alcohol. Around 11:00 p.m., the defendant texted R.S. that she and her child were heading over to R.S. and Perkins's house. The last text message exchanged between R.S. and the defendant on November 7, 2014, was at 11:08 p.m.

The following day, November 8, 2014, R.S. and the defendant resumed texting at 10:35 a.m. On November 9, 2014, around 7:30 p.m., the defendant told R.S. that she was funny on the night of November 7 and asked R.S. if she remembered. R.S. replied, "Yes." Thereafter, the defendant and R.S. continued texting in a friendly manner.

On October 22, 2019, during an investigation involving the National Center for Missing and Exploited Children, officers with the Louisiana Bureau of Investigations, Cybercrime Unit, seized several electronic devices from Perkins's residence.[6] An examination of a seized hard drive revealed a seventeen-minute video ("the State's Video") dated November 8, 2014, of Perkins and a female having sexual intercourse with another unknown female who appeared to be

---

[3] The victim is referenced herein only by her initials. See La. R.S. 46:1844(W). Curtin is identified as the defendant and Perkins, since he is identified as a perpetrator but not a named defendant, is identified by his last name.

[4] R.S. and Perkins were married from 2011 to 2015.

[5] In using the term "y'all," R.S. was referring to the defendant and the defendant's minor child.

[6] By this time, Perkins and R.S. were divorced, and Perkins had remarried.

3

unconscious. The victim's face was covered in the State's Video, but she had a distinctive tattoo on her hip. Through a separate cache of photographs and videos of R.S., which were of a sexual nature, investigators were able to establish a preliminary identification of the unknown female. While her face was often covered in the photographs and videos, some clearly showed R.S.'s face and the tattoo shown in the State's Video. R.S. subsequently confirmed that she was in fact the unknown female in the State's Video, and she identified the defendant as the female perpetrator. R.S. told the investigators that she had no recollection of the acts depicted in the State's Video and did not indicate that she consented to the acts. Later, while again claiming no memory of the night's events, R.S. clarified that she would never have consented to "what [the defendant] did to [her]."

R.S. explained that she became friends with the defendant in the summer of 2014 when they exercised together while their children played football on the same team. R.S. testified that the defendant knew she was married to Perkins at that time. According to R.S., Perkins suggested having a "threesome" with the defendant on one occasion, the suggestion made her uncomfortable, and she would not have agreed to a threesome with the defendant.

The defendant admitted to investigators to having a sexual relationship with Perkins beginning in 2013. She also admitted to her friendship with R.S. However, as to the acts depicted in the State's Video, the defendant, like R.S., claimed no recollection.

## DISCUSSION

### Sufficiency of the Evidence

The defendant argues the evidence, both direct and circumstantial, was insufficient to support a finding of guilt beyond a reasonable doubt. She further argues that a preponderance of the evidence established that she was likely acting under the influence of involuntary intoxication.

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Major, 2019-0621 (La. App. 1st Cir. 11/15/19), 290 So. 3d 1205, 1209, writ denied, 2020-00286 (La. 7/31/20), 300 So. 3d 398. A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution, an appellate court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In so doing, an appellate court must consider the entirety of the evidence, both admissible and inadmissible. See State v. Oliphant, 2013-2973 (La. 2/21/14), 133 So. 3d 1255, 1258-59 (per curiam); see also La. C.Cr.P. art. 821(B). When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. Major, 290 So. 3d at 1209.

### Aggravated Rape

The defendant was convicted of aggravated rape. Louisiana Revised Statutes 14:41 (prior to its amendment by 2022 La. Acts No. 173, § 1), in pertinent part, provided:

> A. Rape is the act of . . . oral[] or vaginal sexual intercourse . . . committed without the person's lawful consent.
>
> B. . . . [A]ny sexual penetration . . . however slight, is sufficient to complete the crime.
>
> C. For purposes of this Subpart, "oral sexual intercourse" means the intentional engaging in any of the following acts with another person:
>
> (1) The touching of the . . . genitals of the victim by the offender using the mouth or tongue of the offender.

Louisiana Revised Statutes 14:42 (prior to amendment by 2015 La. Acts

5

Nos. 184, §1 & 256, §1), in pertinent part, provided:

> A. Aggravated rape is a rape committed . . . where the . . . oral[] or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> . . .
>
> (5) When two or more offenders participated in the act.
>
> . . .
>
> B. For purposes of Paragraph (A)(5) of this Section, "participate" shall mean:
>
> (1) Commit the act of rape.
>
> (2) Physically assist in the commission of such act.[7]

The defendant does not argue that sexual intercourse did not occur. Instead, the defendant raises intoxication as a defense. It is well settled that voluntary intoxication can be considered as a defense only in cases where specific intent is a necessary element of the crime. State v. McDaniel, 515 So.2d 572, 575 (La. App. 1st Cir. 1987), writ denied, 533 So. 2d 10 (La. 1988). Aggravated rape is a general intent crime. State ex rel. L.W., 2009-1898 (La. App. 1st Cir. 6/11/10), 40 So. 3d 1220, 1224, writ denied, 2010-1642 (La. 9/3/10), 44 So. 3d 708; see La. R.S. 14:11 and 42. In cases

---

[7] We note that the aggravated rape statute appears to contemplate a victim who did not consent to sexual intercourse **because** the sexual intercourse was committed when two or more offenders participated in the act. Here, R.S. has no recollection of the incident; thus, she could not assert that she withheld consent **because** of the number of participants. However, the statute has been interpreted as (1) the victim did not consent to sexual intercourse and (2) two or more offenders participated in the act. In State v. Watson, 529 So. 2d 94, 97 (La. App. 4th Cir. 1988), writ denied, 535 So. 2d 740 (La. 1989), the Fourth Circuit determined that the portion of the aggravated rape statute, which defined aggravated rape as intercourse committed without lawful consent when two or more offenders participated in the act, was not unconstitutionally overbroad on its face or as applied and did not criminalize the activity of group sex. The Watson court found that the aggravated rape statute required the State to prove that the victim was raped, not simply that group sex occurred. See State in Interest of D.L., Jr., 2017-0891 (La. App. 1st Cir. 11/1/17), 233 So. 3d 671, 677-678. Here, the State appears to argue that the victim did not consent because of her impairment and that two offenders participated.

Since R.S. claimed that she was unconscious at the time of the incident, we note that La. R.S. 14:43 provided that simple rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed when the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim's incapacity. The offense of simple rape was renamed "third degree rape" by 2015 La. Acts Nos. 256, §1.

6

wherein the accused is voluntarily intoxicated at the time of the commission of the offense, the necessary criminal intent is generally found in the accused's intention to become intoxicated, i.e., the accused is held to have intended, in law, all the consequences of her intoxicated condition. McDaniel, 515 So. 2d at 575. Here, the text message between the defendant and R.S. establish that the defendant had been drinking alcohol even before she drove to R.S. and Perkins's house.

Involuntary intoxication is a defense if the condition is the direct cause of the commission of the crime. La. R.S. 14:15(1); see State v. Rives, 407 So. 2d 1195, 1197-98 (La. 1981). The reporter's comment to La. R.S. 14:15 suggests that involuntary intoxication could possibly result from the combined use of alcohol and medications, stating that where the offender is forced or deceived into the intoxicated condition, so that it may be said to be involuntary, her actions are excused. Specific instances noted by the reporter are cases of actual compulsion, drunkenness, or a drugged condition through the stratagem of another, taking the liquor or drug after a physician's prescription, or taking the drug by mistake. La. R.S. 14:15, Reporter's Comment--1950; see also State v. Wisinger, 618 So. 2d 923, 928 (La. App. 1st Cir. 1993), writ denied, 625 So. 2d 1063 (La. 1993).

Intoxication is in the nature of an affirmative defense to a criminal charge and the burden is upon the defendant to prove, by a preponderance of the evidence, that she was in fact intoxicated at the time of the offense. State v. Keating, 2000-51 (La. App. 5th Cir. 10/18/00), 772 So. 2d 740, 744, writ denied, 2000-3150 (La. 10/12/01), 799 So. 2d 494. It is important to note that both R.S. and the defendant make issue of their respective impairment.

The key evidence at trial was the State's Video. The State's Video graphically showed the defendant and Perkins performing various sexual acts on R.S. and each other while the victim lay motionless except for some slight movement of her right hand. The defendant and Perkins took turns recording the

7

incident, which shows the defendant performing various sexual acts by using her mouth and her fingers on R.S.'s vagina, while Perkins engages in vaginal sexual intercourse with R.S.

The State's Video does not establish whether R.S. consented to participating in sexual intercourse with the defendant and Perkins before the camera was turned on. The State's Video does not depict R.S. resisting, and R.S.'s face is not visible at any time during the State's Video because her upper body is covered with a sheet. The fact that R.S. is shown lying down with her upper body covered does not, by itself, establish that she was passed out or in a stupor or abnormal condition of the mind and unable to consent. As previously explained, R.S. claimed that she did not remember ever having sexual intercourse with the defendant and Perkins; thus, she was not able to establish what she did that night to either grant or withhold consent.

R.S. testified that during their marriage, Perkins was a narcotics detective with the Livingston Parish Sheriff's Office. According to R.S., Perkins may have brought home evidence in evidence bags during the marriage. R.S. also stated that during the marriage, certain prescription drugs were present in their home. R.S. conceded that she drank to the point of unconsciousness on a couple of occasions while married to Perkins.

During the trial, Dr. Graham Spruiell was accepted by the court as an expert in the field of psychiatry. He stated that taking Ambien, in certain cases, causes autonitism – a condition which can result in dangerous behaviors such as "sleep driving or having sex or eating or other complex behaviors" wherein a person is unconscious but able to move about and engage in purposive behaviors. The defense asked Dr. Spruiell if it was possible that the defendant was drugged or under the influence of any drugs when she engaged in the conduct depicted in the State's Video. Dr. Spruiell answered, "I can't say that she was under the influence of any particular drug with medical certainty, but I can say that there is reason to

believe that it is possible that she was intoxicated and in such a state."[8]

The defendant argues that the trial court erred in admitting and excluding evidence. However, for the purpose of the sufficiency analysis, as previously explained, we must consider all of the evidence introduced at trial, both admissible and inadmissible, in the light most favorable to the State.

Here, a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could have concluded beyond a reasonable doubt that the State established all of the elements of aggravated rape and the defendant's identity as a perpetrator of that offense. The verdict returned in this case indicates the jury relied on the State's Video and the testimony of R.S. in determining that the defendant acted with general intent in committing the offense. A rational trier of fact could have concluded that both Perkins and the defendant participated in the act and that the victim did not consent. Further, the verdict indicates the jury rejected the theory that the defendant was involuntarily intoxicated during the incident and that the crime was directly caused by that involuntary intoxication. See La. R.S. 14:15(1). A determination of the weight to be given evidence is a question of fact for the trier of fact that is not subject to appellate review. State v. Morrison, 582 So. 2d 295, 303 (La. App. 1st Cir. 1991). Therefore, we find that the entirety of the evidence was sufficient to support the conviction of aggravated rape.

### Video Voyeurism

The defendant was also convicted of video voyeurism. At the time of these offenses, La. R.S. 14:283 pertinently provided:

A. Video voyeurism is:

(1) The use of any camera, videotape, photo-optical, photo-electric, or

---

[8] Neither the State nor the defendant introduced toxicology reports or similar evidence, which would show what the defendant or R.S. had in their systems. There is no evidence in the record to establish that testing was performed to determine the level of impairment of the defendant or R.S.

any other image recording device for the purpose of observing, viewing, photographing, filming, or videotaping a person where that person has not consented to the observing, viewing, photographing, filming, or videotaping and it is for a lewd or lascivious purpose; or

(2) The transfer of an image obtained by activity described in Paragraph (1) of this Subsection by live or recorded telephone message, electronic mail, the Internet, or a commercial online service.

It is apparent from the State's Video that both Perkins and the defendant used a camera to film R.S. for a lewd or lascivious purpose. There are times during the State's Video when both of Perkins's hands are visible and the defendant is holding the camera. Further, as discussed above, the State's Video depicts a sexual encounter between Perkins, the defendant, and R.S., which was filmed for a lewd or lascivious purpose. Whether R.S., at some point, consented to Perkins's and the defendant filming the State's Video is not apparent from the State's Video. It is unclear how long the depicted activity had been going on before the camera was turned on. R.S. was not able to testify as to whether she consented to being filmed because she has no recollection of the incident. No other witness testimony was offered to establish what happened before the filming of the State's Video started. However, at the trial, R.S. did state that she would not have consented to what the defendant did to her under any circumstances.

The verdict indicates that the jury rejected the theory that R.S. consented to being filmed in this manner by Perkins and the defendant. A rational trier of fact could have concluded that both Perkins and the defendant participated in filming the State's Video, that R.S. did not consent to the filming, and that the filming was for a lewd or lascivious purpose. Therefore, we find that the entirety of the evidence was sufficient to support the conviction of video voyeurism.

### Evidentiary Errors

While we find that the evidence was sufficient to support the convictions, we note that the defendant alleges several trial errors relating to the admission and the

exclusion of evidence. Before the trial, the trial court denied the defendant's motion to compel the State to produce a cache of photographs and videos, which contained "masked" photographs of R.S., as referenced above. Also, there was a motion *in limine*, heard after jury selection and before the opening statements, wherein the State sought to thwart the defendant's effort to introduce evidence that R.S. participated in group sex during which a friend gave her tips on how to perform oral sex on Perkins. The trial court ruled that the evidence was not admissible under La. C.E. art. 412.

During the trial, over the defendant's objection, the State introduced two videos of the defendant performing oral sex on Perkins in a dressing room and a photograph of the defendant performing oral sex on an unidentified male. The State did not give notice prior to introducing the photograph of the defendant performing oral sex on an unidentified male, but did give notice of its intent to introduce the dressing room videos. The defendant did not move for a mistrial or request a jury admonition.

As part of her trial strategy, the defendant attempted to establish a pattern whereby Perkins would engage in and film sexual activity in which he would cover the faces of his sexual partners who would feign sleep. Such was the case, the defense alleged, with R.S. To develop this theory, the defendant attempted to question a witness regarding whether photographs of masked women were found throughout the Perkins investigation. In response to the objections by the State, the trial court limited the defendant's ability to question the witness and did not allow the defendant to ask any questions regarding whether masked photographs of R.S. were found. Finally, a motion for new trial was filed when an affidavit was discovered wherein R.S. admitted to having group sex on video on more than one occasion before she married Perkins. The defendant alleged that the affidavit contradicted R.S.'s testimony at trial and refuted the notion that R.S. would not consent to filmed group sex. The trial court denied the motion for new trial, finding

that the evidence was not admissible under Article 412.

In summary, the trial court admitted the two dressing room videos and the photograph of the defendant performing oral sex on an unidentified male and excluded photographs and videos of R.S., sometimes masked, engaged in sexual activity with Perkins; excluded evidence of R.S.'s friend giving her tips on how to perform oral sex on Perkins; excluded evidence of photographs of other masked women found during the Perkins's investigation; and post-trial, excluded R.S.'s affidavit wherein she admitted to having group sex on video on more than one occasion. These rulings will be reviewed below.

### Evidence of Other Acts

In assignment of error number two, the defendant contends that the trial court erred in admitting evidence offered by the State under Louisiana Code of Evidence article 404(B). Evidence of other crimes, wrongs or acts committed by the defendant is generally inadmissible because of the substantial risk of grave prejudice to the defendant. State v. Calloway, 2018-1396 (La. App. 1st Cir. 4/12/19), 276 So. 3d 133, 147, writ denied, 2019-00869 (La. 1/20/21), 308 So. 3d 1164. It is well settled that courts may not admit evidence of other crimes to show the defendant as a woman of bad character who has acted in conformity with her bad character. Id.

However, evidence of other crimes, wrongs, or acts may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. See La. C.E. art. 404(B)(1).[9] Upon request by the accused, the State must provide reasonable notice of its intent to use evidence of other crimes, wrongs, or acts before the trial. Id. The State bears the burden of proving that the defendant committed the other crimes, wrongs, or acts. Calloway, 276 So. 3d at 147. Even

_____

[9] Louisiana Code of Evidence article 404 was revised in 2023, and this legal principle is now contained in La. C.E. art. 404(B)(1)(a).

when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. Thus, this type of evidence is still subject to the La. C.E. art. 403 balancing test. See State v. Hardy, 2014-1569 (La. 11/21/14), 154 So. 3d 537, 538.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Evidence which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. A trial court's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. Calloway, 276 So. 3d at 148.

Prior to trial, the State gave notice of its intent to introduce evidence under Article 404(B) against the defendant. The notice set forth that the evidence consisted of digital photographs and videos of the defendant and Perkins engaging in sexual intercourse or sexual activity in public places and business establishments. The evidence had been recovered from the hard drive of Perkins's computer. The State claimed that the evidence was offered for the purpose of establishing motive and intent, and to rebut the defendant's claim that she was drugged during the instant offense and had no recollection of the incident.

At the hearing on the motion, the State offered two videos of the defendant engaging in oral sex with Perkins in a dressing room.[10] The State argued the videos were offered to establish the nature of the relationship between the defendant and

_____

[10] The State also gave notice of its intent to offer two videos of the defendant at a car wash bending over to vacuum her car while wearing a short dress and exposing her vagina. The court deferred ruling on the admissibility of the car wash videos until trial. At trial, the State did not attempt to offer the car wash videos.

Perkins, which the State asserted was highly probative of intent and motive in the instant case. The State noted that the videos showed the defendant and Perkins repeatedly engaging in "risky" sexual behavior and recording that behavior, which the State argued would "allow a jury to infer intent." The State also pointed out that the defendant was offering a defense of involuntary intoxication, which would completely negate her intent. The defense argued the videos were too dissimilar to be admissible. The defense noted the dressing room videos showed consensual sex between two adults, not three, and without the involvement of drugs.

The trial court ruled that the dressing room videos were admissible on the issues of motive and intent, and allowed their introduction into evidence at trial. The State also introduced into evidence, over objection, the photograph of the defendant performing oral sex on an unidentified male. The State did not provide notice of this photograph prior to trial as required under Article 404(B). However, the trial court overruled the defendant's objection and allowed the photograph into evidence.

Thus, to prove motive and intent, the State offered two minutes and fifty-three seconds of video footage showing the defendant performing fellatio in a dressing room; however, motive and intent are not genuinely at issue. Aggravated rape is a general intent crime, which means that the criminal intent necessary to sustain a conviction is established by the very doing of the proscribed act. State v. Clarke, 2021-01460 (La. 6/29/22), 345 So. 3d 1015, 1018 n.1 (per curiam). The accused crime of aggravated rape is on video, and the defendant does not dispute that the sexual encounter occurred. Neither do the dressing room videos establish motive, which has been defined as the reason an accused has for committing the charged offense. State v. Brown, 398 So. 2d 1381, 1384 (La. 1981). Stated differently, the defendant's behavior in the videos does not establish a reason for committing aggravated rape.

The State further argues that the evidence is relevant to defeat the

14

defendant's defense of intoxication. While it is true that the defendant raises an intoxication defense, the argument that her sexual activity on some unknown date proves that she was sober on the date in question is a non sequitur.

On review, we find that the trial court abused its discretion in admitting the challenged evidence. The videos that the State introduced under Article 404(B) did not establish the defendant's motive or intent to rape R.S., and they did not rebut the defendant's claim that she was drugged during the instant offense and had no recollection of the incident. This error is compounded by the admission of the photograph of the unidentified male without proper notice or foundation. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. The fact that the defendant and Perkins had a sexual relationship was uncontested, and the videos and photograph were unnecessary, hardly probative, if at all, and substantially outweighed by unfair prejudice. Thus, it was an abuse of discretion for the trial court to admit the evidence. See State v. Morgan, 99-1895 (La. 6/29/01), 791 So. 2d 100, 103 (per curiam) ("[B]ecause aggravated rape is a general intent crime, in which the [S]tate need prove only that the defendant voluntarily committed the proscribed act of sexual penetration, evidence of the accused's sexual assaults on other victims is not admissible to prove the accused's intent or motive.").

The erroneous admission of other crimes evidence is a trial error subject to harmless-error analysis on appeal. See State v. Swan, 2018-0320 (La. App. 1st Cir. 12/17/18), 2018 WL 6599023, *13, writ denied, 2019-0151 (La. 5/20/19), 271 So. 3d 1270. The test for determining whether an error is harmless is whether the verdict actually rendered in this case "was surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S. Ct. 2078, 2081, 124 L. Ed. 2d 182 (1993). This

15

issue is addressed below along with the remaining evidentiary rulings.

### *Rape Shield Law*

In assignment of error number three, the defendant contends the trial court erred in excluding evidence of R.S.'s past consensual sexual behavior with Perkins, which was relevant to the element of consent. In cases involving sexually assaultive behavior, La. C.E. art. 412 bars the introduction of evidence of the victim's past sexual behavior, except under limited circumstances. Louisiana Code of Evidence article 412(A)(2) provides, in part:

> When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is . . . not admissible except for:
>
> . . .
>
> (b) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.

A defendant's right to present a defense is guaranteed constitutionally, and she can testify to or give evidence on any matter relevant to an issue material in the case. State v. Everidge, 96-2665 (La. 12/2/97), 702 So. 2d 680, 684. The right of a defendant accused of rape to present a defense is balanced against the victim's interests under the rape shield statute, which is meant to protect the victim of rape from having her sexual history made public. Id. The rape shield law is precisely drawn to exclude evidence of an alleged rape victim's sexual history with persons other than the accused. Id. Article 412 does not proscribe a defendant's right to claim the defense of consent and put forth evidence to support her defense. Evidence of past sexual involvement between the accused and the victim of sexually assaultive behavior "will be" admissible when offered by the accused upon the issue of whether or not the act was consensual. Everidge, 702 So. 2d at 684; see also La. C.E. art. 412(A)(2)(b). Past sexual behavior is not limited to sexual intercourse. Everidge, 702 So. 2d at 684.

On May 5, 2021, the defendant filed a motion to compel, requesting that the State be ordered to produce any data that contained R.S.'s name; copies of all videos of a sexual nature involving Perkins and R.S.; copies of all videos of Perkins having sexual intercourse or engaging in sexual acts with females who were asleep, passed out, nonresponsive, feigning to be asleep, feigning to be passed out, unconscious, drugged, or intoxicated; and a copy of the video from a May 25, 2019 incident[11]. On May 21, 2021, the trial court heard the defendant's motion to compel. The trial court determined that the evidence involving Perkins and other women who were asleep, feigning to be passed out, unconscious, drugged, or intoxicated was not discoverable under La. C.Cr.P. art. 718.1. However, the trial court ordered that evidence involving Perkins and R.S. engaging in sexual acts be produced to the court for an in camera inspection. The trial court subsequently denied the defendant access to the evidence, finding that it was irrelevant and impermissible under Article 412.

To further shield this type of evidence, prior to trial, the State filed a motion *in limine* to exclude protected information pursuant to Article 412. The motion set forth that the State was notified by the defense of its intent to question R.S. regarding alleged past sexual behavior with persons other than the accused. The State argued that the proposed questioning was expressly impermissible under Article 412(A)(2)(a) and (b). At the hearing on the motion, R.S. testified that the incident in question involved her friend giving her advice on how to perform oral sex after they had been drinking but was not intended to be sexual. According to R.S., she

---

[11] Although not charged with the subject crimes, a grand jury issued a separate indictment against Perkins and Cynthia Perkins (who married Perkins after his divorce from R.S.), charging them with several crimes. The May 25, 2019 video is referenced in counts 10 and 11 of Perkins's indictment and involves another woman, identified as Adult Victim 1, who was asleep, unconscious, drugged, and intoxicated. According to the State's notice of intent to introduce other crimes evidence, count 10 was that Perkins committed first degree rape of Adult Victim 1 with the assistance of Cynthia Perkins and count 11 was that Perkins committed video voyeurism of Adult Victim 1.

performed oral sex on Perkins and her friend gave her "a couple tips."[12]

The State argued that the fact that a consensual act occurred between R.S. and her husband did not suggest that R.S. would consent to further sexual activity with a third party and her husband.[13] The State further argued that allowing the challenged information to be introduced would significantly discourage further reports of sexual assault in the future and would violate Article 412. The defense argued that it wished to use the prior incident to show R.S.'s willingness to involve another woman in her and Perkins's sexual activity and that the conduct depicted in the State's Video was perhaps consensual. The trial court found the prior incident was not similar enough to show consent to the incident at issue, and thus, it was excluded by Article 412.

At trial, the defendant attempted to ask Gene Guidry, a Special Agent with the Louisiana Bureau of Investigations, Cybercrime Unit, if his investigation of Perkins yielded photos of R.S. and other women who covered their faces while having sexual intercourse with Perkins, arguing that those photos were similar to the State's Video, which was presented to the jury. The State objected to this line of questioning, and the trial court ruled that "anything about [R.S.] is out" but allowed a general question about whether there were photographs of other women with their faces covered found during the investigation. On appeal, the defendant contends that the trial court erred in ruling that Article 412 prohibited evidence of Perkins engaging in sexual acts with R.S. while R.S. was masked and evidence of R.S. performing oral sex on Perkins while a friend was present.

---

[12] At the hearing on the motion *in limine*, R.S. was asked whether her friend stayed in the room while R.S. performed oral sex on Perkins. R.S. responded, "I don't know." Further, when asked whether the lessons were prior to R.S. performing oral sex on Perkins, R.S. replied, "I don't know, I'm sorry." However, when initially asked about the incident, R.S. stated that there was physical activity between her and Perkins during the instruction and it was "so mortifying." She explained that they were all drinking and it was a "horrible memory." R.S. was also able to recall that the friend spent the night at R.S. and Perkins's house after the incident.

[13] This argument is the logical opposite of the argument offered in support of the introduction of the videos involving Perkins and the defendant wherein the State argued that the defendant's participation in other identified sexual acts established her motive and intent to participate in the charged criminal acts.

As previously explained, evidence of specific instances of the victim's past sexual behavior is admissible when evidence of past sexual behavior with an **accused** is offered by the **accused** on the issue of whether or not the victim consented to the sexually assaultive behavior. See La. C.E. art. 412(A)(2)(b). Further, an additional, narrowly drawn exception is recognized in the comments to Article 412, which states that "[t]his Article, like every Article in this Code is necessarily subject to constitutional requirements[.]" La. C.E. art. 412, comment (b); see also State v. Taylor, 31,224 (La. App. 2nd Cir. 11/13/98), 722 So. 2d 1073, 1076, writ denied, 99-0024 (La. 4/30/99), 741 So. 2d 9. In this vein, the Louisiana Supreme Court has recognized that where highly relevant evidence is available, the State's need to protect the victim from embarrassing cross-examination must be weighed against the probative value of the evidence to determine whether the right of confrontation is being infringed. State v. Vaughn, 448 So. 2d 1260, 1267 (La. 1983); see also La. C.E. art. 412, comment (b).[14]

---

[14] Federal Rule of Evidence 412 addresses this problem by explicitly providing for the admissibility of evidence (other than reputation or opinion) of a victim's past sexual behavior when such evidence "is constitutionally required to be admitted." This Article, like every article in the Louisiana Code of Evidence is necessarily subject to constitutional requirements. See La. C.E. art. 102, Comments--1988, comment (b).

> The rules and procedures embodied in the articles of the Louisiana Code of Evidence do not represent an attempt to interpret the Federal or Louisiana constitution. Constitutional questions should be resolved by the principles and rules of constitutional law. See generally G. Pugh, Louisiana Evidence Law, Ch. 5 (1974); State v. Ludwig, 423 So. 2d 1073 (La. 1982); State v. Brown, 428 So. 2d 438 (La. 1983); State v. Vaughn, 448 So. 2d 1260 (La. 1984). In criminal matters especially the Articles of this Code must be interpreted and applied in light of and within the confines mandated by the Louisiana and federal constitutions. See U.S. Const. Amends. IV, V, VI, & XIV; La. Const. Art. 1, Secs. 2, 3, 5, 13-19 (1974). Louisiana has developed a firm tradition of commitment to the scrupulous observance of the basic tenets of fair play inherent in the constitutional safeguards of due process. See, e.g., State v. Brown, 428 So. 2d 438 (La. 1983); State v. Kahey, 436 So. 2d 475 (La. 1983); State v. Square, 433 So. 2d 104 (La. 1983). In various particulars the Louisiana Constitution of 1974 goes further than its federal counterpart in protecting the interests of the accused and the general citizenry against governmental and private abuses, intrusions, and improprieties. Compare La. Const. Art. I (1974) (Declaration of Rights) with U.S. Const.Amends. 1-10, (Bill of Rights). No intent to alter or delimit these safeguards and principles is intended, nor would any such attempt or effect be constitutionally permissible. U.S. Const. Art. VI. Under special factual circumstances certain specific and otherwise mandatory provisions of this Code must necessarily bow to these notions of fundamental fairness. See, e.g., Chambers v. Mississippi, 410 U.S. 284

The purpose of a rape shield law is to protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior. State v. Williams, 2005-1560 (La. 4/24/06), 927 So. 2d 266, 267. A defendant's right to present a defense is sanctioned constitutionally and is balanced against the victim's interests under the rape shield statute, which is meant to protect the victim of rape from having her sexual history made public. Everidge, 702 So. 2d at 684.

In this limited circumstance, the defense should have been allowed to address the evidence of Perkins and R.S. engaging in sexual acts wherein R.S. is "masked" and evidence that R.S. performed oral sex on Perkins while a friend was present. As previously explained, R.S. was unable to recall the events of the night in question. She was unable to assert that on that night, she refused to be filmed, or resisted, or affirmatively withheld consent. What R.S. did do, however, was assert that she would not have consented to what occurred **under any circumstances**.

The trial court abused its discretion in disallowing the evidence at issue herein. The defendant sought to introduce the evidence to establish that R.S. had a history of consenting to sexual intercourse with Perkins while portions of her upper body were covered and while she was being filmed, arguing that R.S. may have consented to sexual intercourse with Perkins and the defendant on November 8, 2014.

Perkins's sexual history with other women has no bearing on whether R.S. consented and was properly excluded. However, we hold that to exclude evidence of Perkins's sexual behavior with R.S. in reliance upon Article 412 on the narrow basis that Perkins is accused but not charged draws too fine of a line and improperly

(1973); Davis v. Alaska, 415 U.S. 308 (1974); State v. Vaughn, 448 So. 2d 1260 (La.1984). The constitutional interpretation and application of this Code in these circumstances is entrusted to the judiciary.

La. C.E. art. 102, Comments--1988, comment (b).

frustrates the defendant's right to confrontation.[15] What makes this aggravated rape, the State alleges, is that both Perkins and the defendant participated in the act. Under the circumstances of this case, evidence of R.S.'s past sexual behavior with Perkins is admissible when offered by the defendant to establish whether or not R.S. consented to sexual intercourse with the defendant and Perkins. Perkins and R.S. had a history of participating in sexual intercourse wherein R.S.'s upper body was covered. The evidence of Perkins and R.S. engaging in sexual intercourse in this manner is similar to the State's Video. Also, such evidence shows R.S. knowingly consented to Perkins filming their sexual encounters. Likewise, evidence establishing that R.S. performed oral sex on Perkins while her friend coached her contradicts R.S.'s testimony that she was unwilling to engage in sexual activity with a third party. Again, R.S. testified that she would not have consented to sex with Perkins and the defendant under any circumstances. Under Article 412(A)(2)(b), the evidence of R.S.'s consensual sexual behavior with Perkins is admissible, the evidence of R.S.'s friend being present while R.S. performed oral sex is admissible, the evidence of R.S. allowing herself to be filmed is admissible, and the trial court abused its discretion in excluding this evidence. As before, this error requires a harmless error analysis, which will be addressed below along with the remaining evidentiary rulings.

**Motion for New Trial**

In assignment of error number four, the defendant contends the trial court erred in denying the second motion for new trial and ruling that post-trial newly discovered evidence was inadmissible under Article 412. Following sentencing, the defendant moved for a new trial on the basis of the discovery of new and material evidence. See La. C.Cr.P. art. 851(B)(3). Defense counsel alleged that counsel for Perkins had recently informed her of a 2006 affidavit prepared in connection with

---

[15] We note that this appears to be an issue of first impression, i.e. the application of La. C.E. art. 412 when the alleged rape involves two offenders and one of the offenders had an ongoing sexual relationship with the victim.

21

R.S.'s divorce from the man she was married to prior to being married to Perkins. In the affidavit, R.S. indicated she and her husband made two sex videos with another couple. Defense counsel contended that the affidavit contradicted the testimony of R.S. at trial.

Louisiana Code of Criminal Procedure article 851 sets forth the grounds for a new trial and, in pertinent part, provides:

> A. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
>
> B. The court, on motion of the defendant, shall grant a new trial whenever[:]
>
> . . .
>
> (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict[.]

A defendant seeking a new trial based on newly discovered evidence must demonstrate: 1) that the new evidence was discovered after trial; 2) that failure to discover the evidence before trial was not attributable to the defendant's lack of diligence; 3) that the evidence is material to the issues at trial; and 4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial. State v. Cavalier, 96-3052 (La. 10/31/97), 701 So. 2d 949, 951 (per curiam). In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another trier of fact might render a different verdict, but whether the new evidence is so material that it should produce a verdict different from that rendered at trial. The trial court's denial of a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Ruffin, 2016-0264 (La. App. 1st Cir. 9/20/16), 277 So. 3d 319, 325, writ denied, 2016-1913 (La. 9/15/17), 225 So. 3d 483.

The defendant has established that the affidavit was discovered after trial, on

22

March 30, 2022, when the defendant's counsel was contacted by counsel for Perkins and informed that he found the affidavit in a box of documents provided to him by a family member of Perkins. The defendant has also established that the failure to discover the affidavit before trial was not attributable to the defendant's lack of diligence. The affidavit was contained in a divorce proceeding, which took place in Jefferson County, Alabama, in 2006. Without knowledge that the affidavit existed, the defendant could not have reasonably discovered it with due diligence.

Furthermore, the affidavit is material to the issues at trial because it goes to the element of consent and is vital to the defendant's defense. To convict the defendant of aggravated rape, the jury had to find that R.S. did not consent to sexual intercourse because two or more people participated in the act. See La. R.S. 14:42(A)(5). The element of consent rests on whether the jury believed that R.S. was credible during her testimony.

At the hearing on the motion for new trial, the State argued R.S. was responsive and truthful in her testimony, including her testimony that she would not have consented under any circumstances to what the defendant did to her. The State urged the court to deny the defendant's motion because even assuming arguendo that the affidavit was admissible under the rape shield law, in light of the State's Video and the testimony of R.S., the defendant could not establish that it would probably have changed the verdict. See La. C.Cr.P. art. 851(B)(3).

During trial, R.S. stated that she was "uncomfortable" when Perkins referenced having a "threesome" with the defendant. The attorney for the State later asked whether R.S. would have agreed to "something like" having a threesome with the defendant. R.S. replied, "No." The jury heard R.S. deny that she would have sexual intercourse with multiple people at the same time, when the facts set forth in her affidavit establish that she has had sexual intercourse with multiple people at the same time in the past, while being filmed.

23

The trial court noted the affidavit did not fall under the Article 412 exception since it did not involve past sexual behavior with the accused. The court further noted that as such, even if discovered before trial, the new evidence would have been inadmissible under Article 412. However, at the heart of this conviction is the conclusion that R.S. would never have consented to the behavior at issue, and the trial court excluded evidence tending to prove otherwise. This evidence is classic impeachment evidence and should have been admitted. Even if the affidavit would not be admissible under Article 412 (since it relates to her sexual history with third parties), it would certainly be admissible under La. C.E. art. 607.[16] See State v. Stalling, 2019-336 (La. App. 5th Cir. 1/29/20), 290 So. 3d 332, 340, writ denied, 2020-00326 (La. 7/24/20), 299 So. 3d 76 (where the court held that "[t]he right to present a defense and to confront witnesses includes the right of a defendant to attack the credibility of a witness by examining him or her concerning any matter having a reasonable tendency to disprove the truthfulness of his or her testimony"); see also State v. Burrell, 561 So. 2d 692, 708 (La. 1990) (finding that the rule relating to impeachment of witness by proof of a contradictory statement "must not be applied

---

[16] Louisiana Code of Evidence article 607 provides,

A. Who may attack credibility. The credibility of a witness may be attacked by any party, including the party calling him.

B. Time for attacking and supporting credibility. The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked. However, a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect.

C. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.

D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.

(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.

24

in a mechanical manner which would thwart the fundamental constitutional right to present a defense"). Thus, in denying the motion for new trial, wherein the trial court stated it was a "close call" in determining whether the affidavit could be considered impeachment evidence, the trial court's decision was predicated on legal error.

## Harmless Error and New Trial Analysis

We have determined that the trial court improperly admitted evidence that unfairly prejudiced the defendant. This includes the dressing room sex videos and the photograph of the defendant with an unknown man. We have also concluded that the trial court improperly excluded evidence of R.S. performing oral sex on Perkins while her friend gave her "tips" and R.S.'s sexual history with Perkins regarding faking and feigned sleep. Thus, we are required to determine whether or not these trial errors constitute harmless error, i.e., whether the verdict rendered "was surely unattributable to the error." Sullivan, 508 U.S. at 279, 113 S.Ct. at 2081. The evidentiary error we have outlined herein interdicted the basic tenets of fair play inherent in the constitutional safeguard of due process. We are unable to say the verdict rendered is surely unattributable to the legal error, and therefore, the error is not harmless. Thus, a new trial is warranted.[17]

As to the right to a new trial based upon the discovery of new evidence, we are required to determine whether or not the evidence of R.S.'s participation in filmed group sex is of such a nature that it would probably produce a different verdict in the event of a retrial. The denial of a motion for a new trial is not subject to appellate review except for an error of law. La. C.Cr.P. art. 858. We have found such an error in the trial court's ruling on the admissibility of the newly discovered affidavit. Based upon our review, we find this evidence is not cumulative and that there is a

---

[17] We note that, although the Louisiana Supreme Court has often reviewed cumulative error arguments, it has never endorsed them. Instead, the court has consistently found that harmless errors, however numerous, do not aggregate to reach the level of reversible error. State v. Brown, 2018-01999 (La. 9/30/21), 330 So. 3d 199, 284, cert. denied, 142 S. Ct. 1702, 212 L. Ed. 2d 596 (2022). Since we have determined that the evidentiary errors present in this case are not harmless, Brown is not applicable.

25

reasonable probability this evidence would have swayed the jury to return different verdicts on one or both counts. Accordingly, we conclude, based upon the newly discovered evidence, a new trial is warranted.

## CONCLUSION

The trial court's gate keeping function is difficult and complicated when it involves the balancing of the competing constitutional interests of the accused versus the victim. However, it is imperative to our judicial system that criminal convictions be supported by reliable, competent, and altogether trustworthy evidence. State v. King, 2014-1926 (La. 6/30/15), 167 So. 3d 600, 607, (Crichton, J., additionally concurring). We further recognize that our trust in the evidence presented to obtain a conviction is fortified by its ability to withstand confrontation through rigorous cross examination.

Having closely reviewed the record in this case, and in light of its unique facts, we conclude that justice will only be served if the defendant is granted a new trial where a new jury will have the benefit of all the evidence. It is the paramount objective of upholding the integrity of our judicial system that dictates this result. [18]

**CONVICTIONS AND SENTENCES VACATED; REMANDED FOR NEW TRIAL.**

---

[18] Given our decision to vacate the defendant's convictions and sentences and remand the matter for a new trial consistent with the views expressed in the above opinion, we pretermit discussion of the defendant's remaining assignments of error regarding jury deliberations and excessive sentence.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 KA 1110

STATE OF LOUISIANA

VERSUS

MELANIE BARNETT CURTIN

**GUIDRY, C.J., dissents in part and assigns reasons.**

**GUIDRY, C.J., dissenting in part.**

I agree with the majority's determination that while the evidence presented to the jury was sufficient to sustain the convictions, the trial court erred in admitting prejudicial and irrelevant evidence of the defendant's unrelated sexual behavior. I disagree, however, with the majority's finding that the trial court erred in excluding evidence of the victim's unrelated sexual behavior or that any error committed by the trial court was not harmless in this case.

Critical to the conclusion reached in the majority's opinion is the erroneous finding that the victim gave impeachable testimony whereby the majority holds evidence of the victim's unrelated sexual behavior was admissible at trial despite La. C.E. art. 412, the Louisiana rape shield statute. The majority does not assert that any of the exceptions found in the rape shield statute apply, but rather asserts that the defendant's constitutional right to present a defense trumps the rape shield statute, which if that were generally true, such a holding would completely abrogate the efficacy of the rape shield statute.

As the majority points out in a footnote, there are times when evidentiary rules must yield to the defendant's constitutional right to present a defense, but such

yielding can only occur with respect to relevant evidence. See State v. Vaughn, 448 So. 2d 1260, 1267 (La. 1981) (on rehearing). In this case, the majority attempts to assert that evidence of the victim's unrelated sexual behavior is relevant for purposes of impeachment. See Vaughn, 448 So. 2d at 1267 n.1. I disagree with that determination and instead find that the majority misconstrues the victim's testimony in such a way as to improperly find it impeachable.

At trial, the victim clearly stated to the jury that she would not have consented to the actions of the defendant as displayed in the State's Video. Notably, none of the rape shield evidence that the defendant sought to introduce involved or included the defendant.[1] The majority, however, broadly interprets the victim's testimony to find that she stated that she would not have consented to engaging in such sexual behavior as was displayed in the video, completely disregarding the additional caveat in the victim's testimony regarding the defendant. That caveat is not irrelevant, as the majority appears to think, but is critical to determining the relevancy, and thereby admissibility, of the rape shield evidence that the defendant sought to introduce at trial. Even conceding, for argument's sake, that the victim's testimony was somewhat ambiguous as to whether she would not have consented to the sexual acts displayed in the video as opposed to she would not have consented to the sexual acts in the video with the defendant, the majority does not point out or otherwise establish that the jury's verdict was premised on the specific interpretation that she would not have consented to the acts. Moreover, the majority provides no legal authority for holding that such an ambiguity is sufficient grounds to find error in the trial court's exclusion of the rape shield evidence or to otherwise overturn the jury's verdict in this case. Hence, I believe the trial court did not err in excluding the

_____

[1]  If the rape shield evidence had involved or included the defendant, then the evidence would have been admissible pursuant to La. C.E. art. 412(A)(2), which is an exception contained in the rape shield statute for "[e]vidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior."

rape shield evidence that the defendant sought to introduce at trial or used to support her motions for new trial.

Finally, I find the singular trial error identified in this case -- allowing irrelevant evidence of the defendant's unrelated sexual behavior to be presented to the jury -- was harmless. Likewise, I find the majority's pronouncement that the trial error committed in this case was not harmless because the error "interdicted the basic tenets of fair play inherent in the constitutional safeguard of due process" to be conclusory at best.

I, therefore, respectfully dissent from the reversal of the defendant's conviction and the granting of a new trial based on my disagreement with the conclusions reached by the majority on the issues discussed above.